PER CURIAM.
Richard Gambill served in the United States Army between 1969 and 1971. During his service, a trash barrel fell on his head, resulting in a one to two centimeter laceration on his scalp and an abrasion on his forehead. When he left the service, his separation examination was normal. In 1994 and 1995, Mr. Gambill was treated for bilateral cataracts. At that time, his physician told him it is possible for a blow to the head to cause cataracts. Thereafter, Mr. Gambill filed a claim for disability benefits with a regional office of the Department of Veterans Affairs (“DVA”). In his claim, he asserted that his cataracts were service-connected because they were caused by the blow to his head that he suffered during military service. Following a DVA consultation examination, the regional office denied his claim. Mr. Gambill then appealed to the Board of Veter *1309 ans’ Appeals. He waived his right to a hearing before the Board.
By regulation, the Board is authorized to request a medical opinion from a health care professional in the DVA’s Veterans Health Administration (“VHA”) whenever, in the Board’s judgment, “medical expertise is needed for equitable disposition of an appeal.” 38 C.F.R. § 20.901. The Board is also authorized to obtain a medical opinion from an independent medical expert if “expert medical opinion, in addition to that available within the Department, is warranted by the medical complexity or controversy involved in an appeal case.” 38 U.S.C. § 7109(a).
In Mr. Gambill’s case, the Board concluded that the examiner who conducted the consultation examination “did not adequately address the etiology of [Mr. Gambill’s] bilateral cataracts including whether [his] bilateral cataracts were caused by an inservice blow to the head.” The Board therefore requested an additional opinion from a VHA ophthalmologist “as to whether the veteran’s bilateral cataracts and residuals thereof are as likely as not the result of an inserviee head injury.” The ophthalmologist did not examine Mr. Gambill, but provided a report containing a medical opinion. The report summarized Mr. Gambill’s medical history, listed the risk factors for the development of cataracts, and then stated, “In a search of the literature, I could find no reports suggesting head trauma was a cause or an associated risk factor in the development of cataracts.” The ophthalmologist added that “certainly direct eye trauma is an associated risk factor for cataract development [but] the patient denies ocular trauma.”
Pursuant to regulation, the Board provided Mr. Gambill with a copy of the ophthalmologist’s opinion and advised him that he had 60 days “to review the medical opinion and send us any additional evidence or argument you may wish to make.” Mr. Gambill availed himself of that opportunity by submitting a statement in support of his contention that the blow to his head during service had caused his cataracts. Mr. Gambill provided excerpts from several articles found on the Internet. One stated that “cataract formation after non-perforating injuries such as contusion or concussion may occur without any damage to the lens capsule.” A second identified “trauma (e.g., head injury or puncture wound)” as among the causes of cataracts. In addition, Mr. Gambill submitted a letter from his physician stating that “[i]t is possible that a blow to the head can contribute to the development of cataracts and retinal detachments.” Mr. Gambill waived his right to have his case remanded to the regional office for review of the evidence he had submitted and instead asked that the Board proceed with the adjudication of his appeal.
After reviewing all the evidence before it, the Board denied service connection for Mr. Gambill’s cataracts. The Board recognized that Mr. Gambill had submitted evidence, including statements from two physicians, that head trauma could cause cataracts, but it determined that nothing in the record suggested that Mr. Gambill’s cataracts were caused by his head injury. With respect to the physicians’ letters, the Board noted that the physicians “did not specifically state that the veteran’s cataracts developed because of his inserviee head injury,” and that to the extent the letters were offered to establish that Mr. Gambill developed cataracts as a result of his in-service head injury, “they are insufficient in that the doctors did not specifically address the circumstances in this case.”
The Board.reached the same conclusion with respect to the materials from the Internet that Mr. Gambill submitted in *1310 support of the proposition that head trauma can cause cataracts, noting that those materials “were not prepared with consideration of the circumstances of this case.” The Board therefore ruled that “[i]t would be speculative to find that the veteran’s cataracts in this case, first noted in the 1990s, were the result of an inservice head injury, based on the simple fact that head injuries can possibl[y] cause cataracts.” Even if the VHA ophthalmologist was in error as to whether head trauma can cause cataracts, the Board explained, “[tjhere simply is no evidence of record, to include the medical treatise excerpts or [Mr. Gambill’s] private physicians’ statements ... which actually makes this nexus connection. ... The objective evidence of record does not show a relationship between the veteran’s cataracts and his inservice head injury, and it does not provide for a favorable result in this case.” The Board added that the lack of evidence linking Mr. Gambill’s cataracts to his in-service head injury was “particularly dispositive as the first medical evidence of record of cataracts was not until many years after service separation.”
Mr. Gambill appealed to the Court of Appeals for Veterans Claims (“the Veterans Court”). In his brief to that court, he asserted that the DVA had violated his rights under the Due Process Clause of the Fifth Amendment to the Constitution by not allowing him to submit written interrogatories to the VHA ophthalmologist and by failing to advise him that he had the right to do so.
The Veterans Court affirmed. It rejected Mr. Gambill’s due process claim on the ground that an applicant for DVA disability benefits does not have a sufficient property interest in the prospect of receiving benefits to trigger the procedural protections of the Due Process Clause. Instead, the court ruled that “creating a procedural right in the name of fair process principles [for applicants for DVA disability benefits] is primarily based on the underlying concept of the VA adjudicatory scheme, not the U.S. Constitution.” Gambill v. Peake, No. 06-1943, 2008 WL 1883915, at *2 (Ct. Vet.App. Apr. 28, 2008), quoting Prickett v. Nicholson, 20 Vet.App. 370, 382 (2006). With respect to the Board’s authority to conduct its own evidentiary development by requesting a medical opinion, the court stated that the Board “must ensure that it provides the appellant fair process in the adjudication of his claim,” and that “in rendering a decision on a claim, on any evidence developed or obtained by it, [the Board] must provide a claimant with reasonable notice of such evidence and of the reliance proposed to be placed on it, and a reasonable opportunity for the claimant to respond to it,” including the right to submit additional evidence. Id., quoting from Thurber v. Brown, 5 Vet.App. 119, 126 (1993). In this case, the court held, the Board gave Mr. Gambill notice of the VHA ophthalmologist’s opinion and an opportunity to submit additional evidence in response, which satisfied the requirements of fairness in the adjudication of his claim. Mr. Gambill then appealed to this court.
I
Mr. Gambill argues that the Due Process Clause of the Fifth Amendment requires that all veterans who apply for disability benefits must be afforded the opportunity to confront adverse medical evidence, at least through the use of interrogatories. In addition, he contends, they must be given notice of that right.
Although the Supreme Court has declined to address the question whether due process protections apply to the proceedings in which the DVA decides whether veteran-applicants are eligible for disability benefits, see Walters v. Nat’l Ass’n of Radiation Survivors, 473 U.S. 305, 312, *1311 320 n. 8, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985), we have recently held that the Due Process Clause applies to such proceedings. See Cushman v. Shinseki, No. 2008-7129, 576 F.3d 1290, 2009 WL 2448505 (Fed.Cir. Aug.12, 2009). Accordingly, we turn to the question whether Mr. Gambill’s due process rights were violated by the failure to provide him with the right to serve interrogatories on the VHA ophthalmologist and to notify him that he had that right.
II
By regulation, the Board of Veterans’ Appeals provides a claimant with notice that a VHA opinion has been requested and provides a copy of the opinion when it is received by the Board. 38 C.F.R. § 20.903(a); see also 38 U.S.C. § 7109(c) (when the DVA obtains an opinion from an independent medical expert, the Board similarly notifies the claimant of the request for an expert opinion and provides a copy of the expert’s report as soon as it is received). The claimant then has 60 days to respond to the medical opinion by submitting any relevant evidence or argument that may assist the Board in reaching an equitable result. 38 C.F.R. § 20.903(a).
Mr. Gambill argues that the Due Process Clause is not satisfied by giving the veteran the opportunity to respond to an opinion from a VHA medical professional or an independent medical examiner, but that the veteran must be given an opportunity to confront any physician who submits a medical opinion that the veteran regards as contrary to his interests in whole or in part. The submission of interrogatories, he contends, is the minimum necessary to satisfy his due process right to confront the evidence against him.
We need not address the broad questions whether the absence of confrontation rights in veterans’ benefits cases renders such proceedings fundamentally unfair in general, or whether it could render the proceedings unfair in a particular case, because it is clear that the absence of a right to confrontation was not prejudicial in this case.[1] Even assuming that claimants in veterans’ disability compensation proceedings have a constitutional right to challenge adverse evidence through interrogatories, the denial of that right in a particular case is subject to harmless error analysis. The Supreme Court has held that even in criminal cases, in which the right of confrontation is expressly guaranteed by the Sixth Amendment, a violation of that right can be harmless error. See Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); see also Neder v. United States, 527 U.S. 1, 18, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); Coy v. Iowa, 487 U.S. 1012, 1021-22, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). Harmless error is fully applicable to veterans’ claims cases, subject to the same principles that apply generally to harmless error analysis in other civil and administrative cases. See Shinseki v. Sanders, — U.S. -, 129 S.Ct. 1696, 1704, 173 L.Ed.2d 532 (2009) (citing the harmless error provision of title 38 that applies to proceedings before the Court of Appeals for Veterans Claims, 38 U.S.C. § 7261(b)(2), and the parallel harmless error provision of the Administrative Procedure Act, 5 U.S.C. § 706, that applies generally to administrative proceedings). In such cases, the party “who seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted.” Palmer v. Hoff *1312 man, 318 U.S. 109, 116, 63 S.Ct. 477, 87 L.Ed. 645 (1943); see also Sanders, 129 S.Ct. at 1706 (“the party seeking reversal normally must explain why the erroneous ruling caused harm”).
As the Board of Veterans’ Appeals found, the evidence that Mr. Gambill presented in support of his claim was clearly insufficient to establish service connection for his cataracts because it failed to show a causal nexus between his in-service head injury and his cataracts. The evidence that Mr. Gambill presented to the regional office and the Board consisted of the following: (1) he suffered a head injury during service; (2) he developed cataracts more than 20 years later; and (3) his treating physician stated that “[i]t is possible that a blow to the head can cause cataracts.”[2] That evidence showed only that it is possible that cataracts can be caused by head trauma; it did not show that Mr. Gambill’s cataracts were caused by the injury he suffered in service.
Because the DVA consultation examination did not support Mr. Gambill’s claim that his cataracts were caused by his in-service head injury, the Board requested an opinion from the VHA ophthalmologist and specifically asked that she address whether Mr. Gambill’s cataracts were as likely as not the result of his in-service injury. As it turned out, the VHA ophthalmologist’s report did not help Mr. Gambill. But it left him no worse off than he was without the report, as the rest of the evidence before the Board failed to prove actual causation.
The only portion of the ophthalmologist’s report that Mr. Gambill has disputed is the statement that in her search of the literature she was unable to find any reports suggesting that head trauma was a cause or an associated risk factor in the development of cataracts. The rest of the report consisted of a factual recitation of Mr. Gambill’s medical history, which appears not to be the subject of dispute, and a listing of associated risk factors for the development of cataracts which, except for the absence of any express reference to head injuries other than direct trauma to the eye, also appears to be undisputed.
Mr. Gambill argues that allowing confrontation through the submission of interrogatories would have helped elicit “the scientific methodology employed by the physician” and “the data upon which [she] based her medical opinion.” But even if he had succeeded in completely undermining the ophthalmologist’s opinion and had obtained her agreement that the medical literature showed that head trauma is a possible cause of cataracts, that evidence would still not show that Mr. Gambill’s in-service blow to the head caused cataracts in his case. The problem of establishing actual causation in this case would remain Mr. Gambill’s stumbling block; nothing he could realistically expect to obtain by way of confrontation of the VHA ophthalmologist, who did not examine him, would overcome that problem.
The absence of any prejudice to Mr. Gambill from the VHA ophthalmologist’s report is apparent from the manner in which the Board analyzed Mr. Gambill’s case. In particular, the Board found it unnecessary to resolve the apparent conflict between the VHA ophthalmologist’s statement about her search of the medical literature and the materials submitted by Mr. Gambill about head trauma being a possible cause of cataracts. As the Board stated, even if the VHA ophthalmologist was in error as to whether head trauma could cause cataracts, there was “simply *1313 no evidence of record, to include the medical treatise excerpts or the private physicians’ statements,” that established an actual causal nexus between Mr. Gambill’s in-service injury and his cataracts. The Board’s analysis thus confirms that the absence of confrontation of the VHA ophthalmologist did not prejudice Mr. Gambill’s claim.
Because we conclude that the absence of confrontation had no prejudicial effect in this case, it is not necessary to address Mr. GambilPs further claim that the Board is obligated not only to provide claimants with the right to serve interrogatories on VHA physicians and independent medical experts, but also to advise the claimants of them right to do so. Thus, we do not reach the question whether Mr. Gambill’s failure to request the right to serve interrogatories on the VHA ophthalmologist resulted in a waiver of whatever rights to confront witnesses in the administrative process that he might have as a matter of due process.
Each party shall bear its own costs for this appeal.

AFFIRMED.

. Because Mr. Gambill has argued that due process required not only that he be allowed to serve interrogatories on medical experts, but also that he be advised of that right, we do not rest our decision on his failure to request that he be allowed to serve interrogatories on the VHA ophthalmologist.

. He subsequently supplemented that evidence, but his additional evidence was of the same character, all of it directed to the general proposition that it is possible for head trauma to cause cataracts.