# United States Court of Appeals for the Federal Circuit

---

**JIMMY R. SPRINKLE,**
*Claimant-Appellant,*

**v.**

**ERIC K. SHINSEKI, Secretary of Veterans Affairs,**
*Respondent-Appellee.*

---

2012-7156

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 10-3231, Judge Alan G. Lance Sr.

---

Decided: October 24, 2013

---

JOHN F. CAMERON, of Montgomery, Alabama, arguing for claimant-appellant.

VINCENT D. PAUL PHILLIPS, JR., Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, arguing for respondent – appellee. With him on the brief were STUART F. DELERY, Principal Deputy Assistant Attorney General, JEANNE E. DAVIDSON, Director, MARTIN F. HOCKEY, JR., Assistant Director, and CARRIE A. DUNSMORE, Trial Attorney. Of counsel on the brief were DAVID J. BARRANS, Deputy Assistant General Counsel,

and TRACEY PARKER WARREN, Attorney, United States Department of Veterans Affairs, of Washington, DC.

―――――――――――

Before RADER, *Chief Judge,* REYNA, and TARANTO, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* REYNA. Dissenting opinion filed by *Circuit Judge* TARANTO.

REYNA, *Circuit Judge.*

Jimmy Sprinkle appeals a decision of the Court of Appeals for Veterans Claims, which denied his claims for entitlement to service connection for mitral valve prolapse and benign familial myoclonus. *See Sprinkle v. Shinseki,* No. 10-3231, 2012 U.S. App. Vet. Claims LEXIS 284 (Vet. App. Feb. 23, 2012). We agree that Mr. Sprinkle was not denied fair process as it related to responding to a medical exam ordered by the Board of Veterans' Appeals ("Board"). Accordingly, we *affirm.*

## I. BACKGROUND

Mr. Sprinkle served in the U.S. Army from May 13, 1973 until February 19, 1974. While in the service, Mr. Sprinkle was diagnosed with schizophrenia and prescribed a high dose of Thorazine®. In August 1990, almost seventeen years after separating from the military, Mr. Sprinkle was diagnosed with mitral valve prolapse and chorea, a movement disorder similar to benign familial myoclonus. After Mr. Sprinkle succeeded in establishing entitlement to disability compensation before the Social Security Administration, the Veteran's Affairs (VA) Regional Office awarded Mr. Sprinkle a nonservice-connected pension on April 14, 1993 effective August 1990. On October 26, 2001, Mr. Sprinkle filed an application with the VA for entitlement to a service connection for mitral valve prolapse and myoclonus. Mr. Sprinkle maintained that he was incorrectly diagnosed with schiz-

ophrenia while in the service and that the high doses of Thorazine® he received worsened his mitral valve prolapse and caused his myoclonus.

Following an initial medical exam, the Regional Office concluded that Mr. Sprinkle's conditions were not service-connected due to the seventeen-year gap between service and the onset of his mitral valve prolapse and myoclonus. In a July 27, 2009 decision, the Board remanded to the Regional Office for another medical examination to address a letter from Mr. Sprinkle's private physician that indicated that his conditions were worsened by his in-service ingestion of Thorazine®. Mr. Sprinkle received a second VA examination on October 7, 2009, but the Regional Office continued to deny his entitlement to service connection in a October 21, 2009 Supplemental Statement of the Case. The Supplemental Statement of the Case summarized and relied on the medical opinions derived from the October 7th examination: neither Mr. Sprinkle's mitral valve prolapse nor his familial myoclonus was "caused by or a result of the administration of thorazine while he was on active duty military service." Joint App'x 90. Furthermore, Mr. Sprinkle was notified that he had a period of time (30 days) to respond with additional comments or evidence before his appeal would be returned to the Board; alternatively, Mr. Sprinkle could request that the Regional Office return his appeal to the Board prior to the expiration of the 30-day period. On November 4, 2009, Mr. Sprinkle pursued the latter course by indicating that he had no other information or evidence to submit and requesting that his case be returned to the Board as soon as possible.

On November 13, 2009, the Regional Office sent Mr. Sprinkle a letter, notifying him that his appeal had been certified to the Board and that the Regional Office was transferring all his records to the Board. The letter also indicated that Mr. Sprinkle had 90 days, or until the Board issued a decision in his case, to send the Board

additional evidence concerning his appeal. On November 20, 2009, Mr. Sprinkle, now through counsel, responded to the Regional Office, disagreeing with the conclusions of its Supplemental Statement of the Case and expressing a desire to have his appeal returned to the Board. In doing so, Mr. Sprinkle also requested that "all . . . evidence . . . obtained by the VA after December 1, 2004," be sent to him. Joint App'x 92. This request was broad enough to include the medical examiner's October 7, 2009 opinion. Mr. Sprinkle reiterated his request to the Regional Office in February and March, 2010. Because the record had already been sent to the Board, however, each request for evidence was forwarded by the Regional Office to the Board. *Sprinkle*, 2012 U.S. App. Vet. Claims LEXIS 284, at *3–4.

On May 6, 2010, Mr. Sprinkle's counsel received 525 pages of documents including the medical examiner's October 7, 2009 opinion.[1] Less than thirty days later, on June 3, 2010, the Board issued its decision denying Mr. Sprinkle's entitlement to service connection for his mitral valve prolapse and benign familial myoclonus. Mr. Sprinkle appealed to the Court of Appeals for Veterans

---

[1]    Mr. Sprinkle notes that the date of the cover letter accompanying the documents was May 2, 2010, which was a Sunday. Appellant's Br. 9 & n.1. He asks this court to take judicial notice of this fact, ostensibly because mail is not collected on Sundays and "[t]he date the Board furnishes a copy [of an opinion is] presumed to be the same as the date of the letter . . . that accompanies the copy of the opinion for purposes of determining whether a response was timely filed." 38 C.F.R. § 20.903(a). Because we conclude that § 20.903(a) does not apply to this case, we see no reason to consider any other date than May 6, 2010, the date Mr. Sprinkle admittedly received the documents.

Claims arguing, *inter alia*, that the Board failed to afford him fair process in the adjudication of his claims by not providing him with a copy of the October 7, 2009 medical examiner's opinion until fewer than 30 days before the Board's decision. The appeals court rejected Mr. Sprinkle's fair process arguments and affirmed the Board's decision denying entitlement to service connection. Mr. Sprinkle timely appealed to this court. We have jurisdiction pursuant to 38 U.S.C. § 7292(a), (c).

## II. STANDARD OF REVIEW

According to 38 U.S.C. § 7292(a), this court reviews decisions of the Court of Appeals for Veterans Claims with respect to the validity of a decision on a rule of law or of any statute or regulation or any interpretation thereof that was relied on in making the decision. § 7292(a). Except to the extent an appeal presents a constitutional issue, this court may not review a challenge to a factual determination or a challenge to a law or regulation as applied to the facts of a particular case. § 7292(d)(2). Accordingly, we review questions of statutory and regulatory interpretation *de novo*. *Moody v. Principi*, 360 F.3d 1306, 1310 (Fed. Cir. 2004).

## III. DISCUSSION

### A. The Regulations

Claims for veterans' benefits are initially developed and adjudicated by a VA Regional Office. *See* 38 U.S.C. § 7105(b)(1), (d)(1). Decisions of the Regional Office are then reviewed on appeal by the Board. *See* 38 U.S.C. § 7104(a). To ensure that claimants receive the benefit of this two-tiered review within the agency, all evidence relevant to a claim generally must be considered by the Regional Office in the first instance. *Id.* Accordingly, the Regional Office conducts all necessary evidentiary development, including obtaining medical examinations and opinions. 35 U.S.C. § 5103A(d). If the Regional Office

denies a benefit sought, it must provide the claimant notice of the decision and include "a summary of the evidence considered by the Secretary." 38 U.S.C. § 5104(b). And if the claimant disagrees with that denial, the Regional Office must then prepare a Statement of the Case that includes "[a] summary of the evidence in the case pertinent to the issue or issues with which disagreement has been expressed." 38 U.S.C. § 7105(d)(1); *see also* 38 C.F.R. § 19.29 (requiring that the Statement of the Case "be complete enough to allow the appellant to present written and/or oral arguments before the Board"). Any additional evidence that the claimant presents thereafter must be addressed by the Regional Office in a Supplemental Statement of the Case. 38 C.F.R. §§ 19.31(b), 19.37(a).

Congress created a narrow exception to this first-instance consideration of evidence by the Regional Office, providing that "when, in the judgment of the Board, expert medical opinion . . . is warranted by the medical complexity or controversy involved in an appeal case, the Board may secure an advisory medical opinion from one or more independent medical experts who are not employees of the [VA]." 38 U.S.C. § 7109(a); *see also* 38 C.F.R. § 20.901(a). Additionally, Congress, and the VA through the passage of enabling regulations, created a procedural safeguard to this first-instance evidence gathering by the Board. Specifically, the Board is required to notify the claimant that it is requesting an advisory medical opinion; provide the claimant with a copy of the opinion; and allow the claimant 60 days to respond to the opinion with evidence or argument. § 7109(c); 38 C.F.R. § 20.903(a). This case, however, does not implicate this exception. The Board did not obtain an advisory opinion pursuant to § 20.901. *Cf. Gambill v. Shinseki*, 576 F.3d 1307, 1309 (Fed. Cir. 2009). Instead, it remanded the case for a medical examination administered by the Regional Office.

*In re Sprinkle*, No. 05-06 785A, slip op. at 2–3 (B.V.A. Jul. 27, 2009).

Under 38 C.F.R. § 19.9, the Board is required to remand a case to the Regional Office specifying the action to be taken "[i]f further evidence, clarification of the evidence, correction of a procedural defect, or any other action is essential for a proper appellate decision." § 19.9. Following any additional development of the evidence, the Regional Office decides whether the record as a whole supports allowance of the benefits sought. 38 C.F.R. § 19.38. If any benefit sought remains denied, the Regional Office must issue a Supplemental Statement of the Case concerning the additional development that informs the claimant of any material changes in, or additions to, the information previously considered by the Regional Office. *Id.*; 38 C.F.R. § 19.31. The claimant is then given 30 days to respond to the Supplemental Statement of the Case before the appeal is returned to the Board. § 19.38. After the appeal is certified to the Board, the claimant has an additional 90 days to submit new evidence to the Regional Office. 38 C.F.R. § 20.1304(a). The question presented by this case is whether fair process requires that the Board allow the claimant an additional 60 days to respond to evidence obtained on remand after the claimant declines to respond to a summary of that evidence in a Supplemental Statement of the Case.

## B. Fair Process

In *Thurber v. Brown*, 5 Vet. App. 119 (1993), the Court of Appeals for Veterans Claims created what became known as the "fair process" doctrine, holding that, before the Board relies on any evidence developed or obtained subsequent to the issuance of the most recent Statement of the Case or Supplemental Statement of the Case, the Board must "provide a claimant with reasonable notice of such evidence . . . and a reasonable opportunity for the claimant to respond to it." *Id.* at 126. The claim-

ant must be permitted to respond with not only argument and comment, but also provide additional evidence. *Austin v. Brown*, 6 Vet. App. 547, 551 (1994).

This court has not explicitly addressed the fair process doctrine. *See Gambill*, 576 F.3d at 1310–11 (discussing the fair process concerns involved in a denial of the claimant's ability to serve interrogatories on a medical examiner, but concluding that the denial was harmless error). When the Court of Appeals for Veteran's Claims created a procedural right in the name of fair process, the court primarily relied on the underlying VA adjudicatory scheme. *Gambill*, 576 F.3d at 1310. At the time, neither this court nor the Supreme Court had ruled on the extent to which applicants for government benefits had a property right in their expectation. *Thurber*, 5 Vet. App. at 123. Instead, the court premised its holding upon the considerations of fair process announced in *Gonzales v. United States*, 348 U.S. 407 (1955). In *Gonzales*, the Supreme Court held that despite silence in the applicable statute and regulations as to a particular procedural requirement, the requirement was implicit in the statute and regulations when "viewed against our underlying concepts of procedural regularity and basic fair play." *Id.* at 412. Since that time, this court has held the Due Process Clause of the Constitution applies to proceedings in which the VA decides whether claimants are eligible for veterans' benefits. *Cushman v. Shinseki*, 576 F.3d 1290, 1299–1300 (Fed. Cir. 2009). In light of this precedent and *Thurber*, the question becomes whether the fair process doctrine applies in this case. We conclude that it does not.

## C. Analysis

By its terms, the fair process doctrine is only triggered when "evidence [is] developed or obtained by [the Board] subsequent to the issuance of the most recent [Statement of the Case] or [Supplemental Statement of the Case]

with respect to such claim." *Thurber*, 5 Vet. App. at 126. In this case, while the Regional Office developed evidence on remand through a medical examination, it issued a Supplemental Statement of the Case that provided a "summary of the evidence in the case pertinent to the issue or issues with which disagreement has been expressed," 38 U.S.C. § 7105(d)(1), and that was "complete enough to allow the appellant to present written and/or oral arguments before the [Board]," 38 C.F.R. § 19.29. Crucially, Mr. Sprinkle has not challenged the adequacy of the summary. *Sprinkle*, 2012 U.S. App. Vet. Claims LEXIS 284, at *4. It follows that the Board did not develop or obtain any evidence subsequent to the issuance of the most recent Supplemental Statement of the Case. Indeed, even though Mr. Sprinkle had 30 days to respond to the Supplemental Statement of the Case, he expressly notified the VA that he had no other information or evidence to submit and requested that his case be returned to the Board as soon as possible. Supp. App'x 14. Because the Regional Office received and considered the evidence before summarizing it in a Supplemental Statement of the Case, this case does not implicate the statutory exception to the prohibition against first-instance Board review of evidence that the fair process doctrine is designed to safeguard.

This case is unlike most other cases that implicate the doctrine where the Board has obtained an advisory medical opinion (or treatise) pursuant to § 7109 (and 38 C.F.R. § 20.901) and fails to allow the claimant to respond with additional evidence or interrogatories. *E.g.*, *Gambill*, 576 F.3d 1307; *Thurber*, 5 Vet. App. 119. Although this case involves a medical examination conducted by the Regional Office on remand, Mr. Sprinkle argues that the fair process doctrine should be extended to cover it. In particular, Mr. Sprinkle argues that, in *Young v. Shinseki*, 22 Vet. App. 461 (2009), the Court of Appeals for Veterans Claims has extended the fair process doctrine to cases

involving Board remands. *Young* is distinguishable from Mr. Sprinkle's case because Mr. Sprinkle was put on notice about the substance of the medical report through the Supplemental Statement of the Case. Also, Mr. Sprinkle did receive a copy of the medical examination almost a month before the Board issued its decision. In *Young*, the veteran did not even receive a copy of the medical opinion until after the Board issued its decision. *Young*, 22 Vet. App. at 471. Thus, because the Regional Office in this case considered the medical examination initially before summarizing it in a Supplemental Statement of the Case and there is nothing undermining that summary, we conclude that the fair process doctrine is not implicated by this case.

Mr. Sprinkle also argues that the fair process doctrine requires the Board to provide him with a copy of the medical examiner's opinion and allow him 60 days to respond. Mr. Sprinkle relies on § 20.903(a) to support his argument for incorporating a 60-day response period into the fair process doctrine. That regulation, however, is inapplicable to this case because it only applies to advisory opinions obtained by the Board pursuant to § 20.901. *See Gambill*, 576 F.3d at 1309. Section 20.901 provides that "[t]he Board may obtain a medical opinion from an appropriate health care professional in the Veterans Health Administration . . . on medical questions involved in the consideration of an appeal when, in its judgment, such medical expertise is needed for equitable disposition of an appeal." § 20.901(a). In this case, the Board remanded to the Regional Office to conduct a medical examination. *Sprinkle*, slip op. at 2–3. Accordingly, the pertinent regulations controlling actions by the Regional Office were §§ 19.31, 19.37, and 19.38. Consistent with those regulations, the Regional Office issued a Supplemental Statement of the Case summarizing the evidence it obtained on remand and returned the case to the Board

after Mr. Sprinkle indicated that he had no additional evidence to submit.

While it is regrettable that there was less than 30 days between when Mr. Sprinkle's counsel received the medical exam he subsequently requested and when the Board issued its decision, Mr. Sprinkle was not prejudiced by any action of the agency. *See Gambill*, 576 F.3d at 1311 ("Harmless error is fully applicable to veterans' claims cases, subject to the same principles that apply generally to harmless error analysis in other civil and administrative cases.") (citing *Shinseki v. Sanders*, 556 U.S. 396, 406 (2009)). Had Mr. Sprinkle not instructed the Regional Office that he had no additional evidence to submit and not requested that it immediately return his appeal to the Board, his record would have remained with the Regional Office. This would have enabled the Regional Office to timely process his subsequent requests for documents including the medical examiner's opinion rather than having to forward those requests to the Board. Furthermore, Mr. Sprinkle had more than seven months to offer additional evidence from the date the Regional Office issued its Supplemental Statement of the Case to the date when the Board issued its decision. This vastly exceeds the four months required by the regulations. § 19.38 (30 days); § 20.1304(a) (90 days). Yet Mr. Sprinkle chose not to respond to the only requirement of the Regional Office under the regulations: a summary "complete enough to allow the appellant to present written and/or oral arguments before the [Board]." 38 C.F.R. § 19.29. Accordingly, Mr. Sprinkle cannot show prejudice in this case.

## IV. CONCLUSION

For the foregoing reasons, we agree with the Court of Appeals for Veterans Claims' determination that Mr. Sprinkle was not denied fair process. We have considered

Mr. Sprinkle's other arguments and find nothing in them that upsets our conclusions.  Accordingly, we *affirm*.

## **AFFIRMED**

### COSTS

Each party shall bear its own costs.

# United States Court of Appeals
# for the Federal Circuit

---

**JIMMY R. SPRINKLE,**
*Claimant-Appellant,*

**v.**

**ERIC K. SHINSEKI, Secretary of Veterans Affairs,**
*Respondent-Appellee.*

---

2012-7156

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 10-3231, Judge Alan G. Lance Sr.

---

TARANTO, *Circuit Judge*, dissenting.

I would vacate the decision of the Court of Appeals for Veterans Claims and remand the matter for that court to reconsider its ruling on the non-constitutional "fair process" doctrine. The Veterans Court's discussion leaves uncertain how it interpreted the doctrine. On this "rule of law" issue, 38 U.S.C. § 7292(a), it is advisable for the Veterans Court to provide clarification in the first instance.

Our jurisdictional grant covering this case, 38 U.S.C. §§ 7292(a), (d)(1), sharply limits what we may decide. Mr. Sprinkle has not presented a constitutional issue. He has presented only an argument based on a Department of Veterans Affairs (VA) regulation, 38 C.F.R. § 20.903(a),

and an argument based on the "fair process" doctrine, which the Veterans Court derived from the statutory regime. Without a constitutional challenge before us, we have no jurisdiction to decide any disputed question of how the legal standards invoked by Mr. Sprinkle apply to his particular case. We may decide only whether the Veterans Court relied on an incorrect view of the legal standards Mr. Sprinkle invokes. *See Munro v. Shinseki*, 616 F.3d 1293, 1296 (Fed. Cir. 2010); *Forshey v. Principi*, 284 F.3d 1335, 1351 (Fed. Cir. 2002) (en banc).

The Veterans Court read 38 C.F.R. § 20.903(a) to apply only when the Board of Veterans' Appeals has requested that a medical advisory opinion be furnished directly to it, not when the Board has remanded the case for the Regional Office to develop additional medical evidence, including by providing the claimant a medical examination. I see no error of law in that reading of the regulation, considered in its statutory and regulatory context. With no identified error of law in the interpretation of the regulation, there is no further role for us in reviewing Mr. Sprinkle's regulation-based argument.

With respect to Mr. Sprinkle's invocation of the "fair process" doctrine, the Veterans Court left unclear how it interprets the doctrine. The uncertainties may bear on its resolution of Mr. Sprinkle's case. The following undisputed facts frame the legal question: acting under an order of the Board, the Regional Office gave Mr. Sprinkle a medical examination, which resulted in a medical report (J.A. 86); it provided him with a Supplemental Statement of the Case that partly described the report but did not quote it, and it did not give the report to Mr. Sprinkle (*id.* at 89-91); Mr. Sprinkle said that he had no further evidence to submit but then asked, repeatedly, for a large volume of VA records, a request that included the report (*id.* at 92-95, 96, 99); the VA agreed that he was entitled to the report and furnished it after six months (*id.* at 103); one month later, the Board relied on the report, specifical-

ly relying on statements in the report that do not appear in the Supplemental Statement of the Case (*id.* at 23-25); but neither before nor after receiving the requested report did Mr. Sprinkle ask the Board to postpone its ruling until he could both see the report and obtain any needed medical or other consultation to enable him to file an adequate response to it.

The Veterans Court made very limited points about the "fair process" doctrine in rejecting Mr. Sprinkle's argument that the Board violated the doctrine by relying on evidence before he had been given a fair opportunity to respond to that evidence, where he had requested the evidence and the agency agreed that he was entitled to it. *Sprinkle v. Shinseki*, No. 10-3231, 2012 U.S. App. Vet. Claims LEXIS 284, at *8-10 (Vet. App. Feb. 23, 2012). The Veterans Court said that this case differed from *Thurber v. Brown*, 5 Vet. App. 119 (1993), because here, unlike in *Thurber*, the Regional Office issued a Supplemental Statement of the Case after the evidence at issue was developed. *Id.* at *9. Relatedly, the Veterans Court stated that Mr. Sprinkle "did, in fact, have the opportunity to respond after receiving *notice* of evidence, as he had a total of 120 days after the [Supplemental Statement of the Case] was issued to submit new evidence." *Id.* at *9-10. That statement is not about the opportunity to respond in the month after the VA furnished Mr. Sprinkle the medical report; it is about the opportunity to respond to the Supplemental Statement of the Case that partly described the report. *Id.*

The Veterans Court's analysis is troublingly incomplete about its understanding of the "fair process" doctrine. The analysis does not say that "fair process" is afforded if, but only if, a Supplemental Statement of the Case tells the claimant everything about the evidence that having the evidence would disclose. The Veterans Court may have avoided so limiting its reasoning about "fair process" because such a limited characterization of

the doctrine might not decide this case: the Board undisputedly relied on statements in the medical report that were not described in the Supplemental Statement of the Case. *See In re Sprinkle*, No. 5-06 785A, slip. op. at 6-7 (B.V.A. Jun. 3, 2010); J.A. 90. Similarly, the Veterans Court did not limit its description of "fair process" to circumstances in which the evidence itself is turned over in sufficient time for the claimant to prepare an adequate response before the Board relies on the evidence in ruling on a claim. Critically, nowhere did the Veterans Court say that the month Mr. Sprinkle had after receiving the medical report was adequate.

The Veterans Court's brief rationale is broad. It refers simply to the fact that the VA issued a Supplemental Statement of the Case after the medical report was prepared and thus gave Mr. Sprinkle "*notice* of evidence," though not the evidence itself. *Sprinkle*, No. 10-3231, 2012 U.S. App. Vet. Claims LEXIS 284, at *9-10. But I am not prepared to conclude that the Veterans Court truly adopted so weak a view of what constitutes "fair process."

For one thing, the Veterans Court did not discuss the obvious issues raised by such an understanding. In our legal system, where a tribunal relies on evidence in a way that is adverse to a party, it is virtually never sufficient to have told the party in advance that the evidence exists, or even to have provided a description of it; the party is broadly entitled, upon request, to scrutinize the evidence directly and not be forced to rely on the accuracy or completeness of another's description of it. This principle is fundamental to notions of fair process even in the constitutional context. *See, e.g.*, *Greene v. McElroy*, 360 U.S. 474, 496 (1959); *United States v. Abuhamra*, 389 F.3d 309, 322 (2d Cir. 2004); *American-Arab Anti-Discrim. Comm.*, 70 F.3d 1045, 1070 (9th Cir. 1995). It is hard to see how it could not be fundamental in a claimant-friendly adjudicatory system like the one established for

veterans' benefits. Perhaps in some settings an argument might be made for withholding evidence from a party even if the tribunal relies on it. This case involves no such argument: the government acknowledges that Mr. Sprinkle was entitled to be given the evidence upon request.

Uncertainty about the Veterans Court's understanding of "fair process" is compounded by the difficulty of seeing how its ruling here squares with what appears to be the most on-point of its precedents about "fair process," *Young v. Shinseki*, 22 Vet. App. 461 (2009). There, the VA gave Mr. Young a medical examination in November 2004, which resulted in a medical report, but despite multiple requests for the report, the VA did not provide it to Mr. Young before the Board issued its decision in April 2006. The Veterans Court held:

> By failing to furnish the appellant a copy of the 2004 medical examination report before the Board considered and relied on it in the April 2006 decision, and after the appellant's multiple requests for a copy of the report, VA violated the fair process principle underlying *Thurber v. Brown*, 5 Vet. App. 119 (1993).

*Young*, 22 Vet. App. at 471-72.

The Veterans Court did not discuss *Young* in the present case. In particular, it did not distinguish the non-furnishing of the report before the Board made its decision in *Young* from the furnishing of the report only one month before the Board made its decision here. The legal principle at issue must focus on an adequate opportunity to prepare a response to evidence before the tribunal relies on it. As noted, the Veterans Court nowhere said that the one-month period here was adequate for a proper response.

It appears, moreover, that in *Young*, just as in this case, the VA issued a Supplemental Statement of the Case after creation of the medical report at issue. *Young* does not say otherwise; the governing regulations required the Regional Office in *Young* to issue a Supplemental Statement of the Case after the medical examination of Mr. Young, 38 C.F.R. §§ 19.31(c), 19.38; and the agency is presumed to have followed its regulations, *Miley v. Principi*, 366 F.3d 1343, 1347 (Fed. Cir. 2004). When asked at oral argument, Mr. Sprinkle's counsel—who also was counsel for Mr. Young—stated that the Regional Office in *Young* in fact issued a Supplemental Statement of the Case after the medical examination at issue. Oral Argument at 6:24-28. And the government has carefully avoided asserting the contrary, saying only that the opinion in *Young* does not address the question. Brief for the Appellee at 26.

Apart from its discussion of the "fair process" doctrine, the Veterans Court included a footnote in its opinion stating that counsel for Mr. Sprinkle misdirected his requests for records to the Regional Office (rather than the Board) and did not ask the Board to postpone a decision while he awaited the medical report or prepared a response. *Sprinkle*, No. 10-3231, 2012 U.S. App. Vet. Claims LEXIS 284, at *4 n.1. The Veterans Court did not, however, rely on that footnote in its analysis of the "fair process" doctrine, *id.* at *9-10, and the footnote says only that "the Court is troubled by" those facts, *id.* at *4 n.1. The footnote therefore leaves unclear whether the Veterans Court's view of "fair process" incorporates a notion that the claimant not only must request the evidence at issue but, for example, must ask for a postponement of a Board decision until the evidence is in hand for a period adequate for preparation of a response. The Veterans Court did not say that it was adopting such a requirement or discuss the issues relevant to doing so, including what standards would fit with *Young*.

In my view, the Veterans Court's decision about "fair process" leaves too many questions unanswered to know precisely what rule of law it adopted in rejecting Mr. Sprinkle's claim. Its answers to those questions, moreover, may well depend on practical considerations regarding the working of the system for adjudicating veterans' claims for benefits, including how the Board would be likely to treat a postponement request. It is advisable for the Veterans Court to address those matters in the first instance. I would therefore vacate the decision of the Veterans Court and remand the case.