REYNA, Circuit Judge,
with whom NEWMAN and WALLACH, Circuit Judges, join,
dissenting from denial of rehearing en banc.
In declining to undertake an en banc review, the court leaves in place a judicially created evidentiary presumption that in application denies due process to veterans seeking disability benefits. The presumption, that the Veterans Administration ordinarily and routinely selects competent medical examiners as a matter of due course, was created void of any evidentiary basis. Its application has resulted in a process that is inconsistent with the Congressional imperative that the veterans’ disability process be non-adversarial, and that the VA bears an affirmative duty to assist the veteran. In the face of these circumstances, the government’s cries concerning its administrative burdens do not resonate. I dissent, therefore, from my colleagues’ decision not to undertake an en banc review of these considerations.
I. VETERANS AND EXAMINERS
Mr. Mathis served in the U.S. Air Force from August 1980 to August 2002. J.A. 1. In 2009 he applied for disability benefits through the Veterans Administration for his pulmonary sarcoidosis, shortly after being diagnosed with the condition. J.A. 56. In March 2011, Mr. Mathis had a hearing before a Decision Review Officer. J.A. 51. At the hearing, he and his ex-wife testified that his breathing difficulties began while he was in the military. J.A. 57. He also submitted statements from two of his fellow service members that described Mr. Mathis’s shortness of breath during active military service and since that time. Id.
In February 2012, the VA requested a medical opinion on whether Mr. Mathis’s sarcoidosis was due to military service or began while he was in service. J.A. 2, 46.[1]
*1354 An examiner reviewed Mr. Mathis’s claims file and provided the VA with an opinion indicating that Mr. Mathis’s sarcoi-dosis was “less likely than not (less than 50 percent probability) incurred in or caused by the claimed in-service injury, event, or illness.” J.A. 47. The following two paragraphs comprise the examiner’s analysis:
While veteran claims to have had some pulmonary symptoms while in service, there is nothing to support that they were related to sarcoidosis. I am not doubting the validity of the letters written by [Mr. Mathis’s fellow service members] Mr. Jackson and Mr. Adams stating that the veteran had some breathing issues while in service. He may very well have had such issues. But the Sarcoido-sis was doagnosed [sic] 7 years after service. There is nothing to indicate that it existed within one year of service. Had veteran had significant breathing issues post service, one can assume he would have sought medical care, and a simple [chest X-ray] would have been-ordered.
As the present lack of documentation exists, it would have been an extreme stretch, and unreasonable, to opine that veteran’s sarcoidosis existed within one year of service.
J.A. 47.
The VA denied Mr. Mathis’s claim for benefits after reviewing the examiner’s opinion and the Board affirmed, explicitly relying on the examiner’s opinion in its analysis. J.A. 57-61. Mr. Mathis timely appealed to the Veterans Court. J.A. 1. At the Veterans Court, Mr. Mathis challenged the Board’s reliance on the examiner’s opinion. Mathis v. McDonald, No. 13-3410, 2015 WL 2415067, at *2-3 (Vet. App. May 21, 2015). He asserted that “there are types of sarcoidosis characterized by a slow and gradual development of symptoms,” and that the examiner’s analysis was inconsistent with this, seeming to implicitly indicate that “all types of sarcoido-sis necessarily have a quick and rapid onset of severe symptomatology.” Id. at *3.
Mr. Mathis argued that the report contained inadequate analysis, but the Veterans Court explained that “there is no reasons or bases requirement imposed on [an] examiner.” Id. at *2 (quoting Acevedo v. Shinseki 25 Vet.App. 286, 293 (2012)). Similarly, while Mr. Mathis complained that the examiner cited no medical authorities, the Veterans Court explained that an examiner is presumed to know about medical authorities under the .presumption of competence:
The presumption that VA medical examiners are competent “includes a presumption that physicians remain up-to-date on medical knowledge and current medical studies.” Monzingo v. Shinseki 26 Vet.App. 97, 106-07 (2012) (holding that the mere fact that an “examiner did not cite any studies is not evidence that” he is unaware of such studies and is not a basis for finding an examination report inadequate).
Id. at *3.
Mr. Mathis also objected to the VA’s failure to establish that the examiner was “qualified to offer an expert opinion” on the issue, which he argued required “specialized knowledge, training or experience in the field of pulmonology.” Id. at *3. The record indicated merely that the examiner was a “staff physician.”[2] J.A. 49. The Veterans Court explained that the “VA benefits from a presumption that it has properly chosen a person who is qualified to provide a medical opinion in a particular case.” Id. at *3 (quoting Parks v. Shinseki, 716 F.3d 581, 585 (Fed. Cir. 2013)). It *1355 explained that a veteran’s “first step” in overcoming the presumption is to object at the Board to an examiner’s competence, and Mr. Mathis had not done so. Id.
On appeal to this court, Mr. Mathis argued that the presumption of competence is inconsistent with the non-adversarial nature and pro-claimant procedures established by Congress for veterans. He argued that the presumption of regularity should not have been applied to the VA and its outside contractors’ processes of selecting examiners.[3] He argued that the presumption of regularity should only apply to routine, non-discretionary, and ministerial procedures, not the competency of medical examiners and their opinions.
II. Rizzo Was Weongly Deoided
In Rizzo, this court affirmed the Veterans Court’s application of the presumption of regularity to the VA’s choice of examiners. Rizzo v. Shinseki, 580 F.3d 1288, 1291 (Fed. Cir. 2009). In Rizzo, neither this court’s decision nor the Veterans Court’s decision cited evidence about the VA’s — or its contractors’ — processes for selecting examiners. Id. at 1292; Rizzo v. Peake, No. 07-0123, 2008 WL 4140421, at *2 (Vet. App. Aug. 26, 2008). The presumption, therefore, was created without any eviden-tiary basis that the VA’s process for selecting examiners regularly yielded competent examiners. This was improper. A “presumption should be predicated on evidence that gives us confidence that a particular procedure is carried out properly and yields reliable results in the ordinary course.” Mathis v. McDonald, 643 Fed.Appx. 968, 973 (Fed. Cir.2016) (“Mathis II”) (citing Posey v. Shinseki 23 Vet.App. 406, 410 (2010) and Malack v. BDO Seidman, LLP, 617 F.3d 743, 749 (3d Cir. 2010)).
Additionally, the presumption of regularity has typically been only applied to routine, non-discretionary, and ministerial procedures. Mathis II at 973-74 (citing, for example, Davis v. Principi, 17 Vet.App. 29, 37 (2003)). In Rizzo, this court affirmed the presumption’s application to something far from a routine, ministerial procedure, a process by which medical examiners are selected to provide expert opinions on medical issues.
The presumption of competence does not apply to private physicians providing reports on behalf of veterans. In reviewing their reports, the Board has indicated that *1356 not every doctor is qualified to testify about every issue, and that some issues require special knowledge. See, e.g., No. 1512074, 2015 WL 2161715, at *16 (Bd. Vet. App. Mar. 20, 2015). This means that, under the presumption, the VA is deemed to have chosen a doctor, nurse, or other examiner who is competent to speak on the specific issue in each case. It is unclear why this court or the Veterans Court would assume that the VA’s process for adjudicating benefits yields reliable results in the ordinary course, given that the Board remands almost half (47% in 2015) of disability compensation appeals back to the regional offices.[4] Specifically, because the presumption of competence was created on a basis that is devoid of evidence showing that the VA’s process for selecting examiners is a regular process that always results in a qualified examiner being selected, this court in Rizzo was wrong to affirm the Veterans Court’s creation of the presumption of competence.[5],[6]
III. Due Process
This court has held that a veteran’s entitlement to disability benefits is a property interest protected by the Due Process Clause of the Fifth Amendment to the United States Constitution. Cushman v. Shinseki, 576 F.3d 1290, 1298 (Fed. Cir. 2009); Sprinkle v. Shinseki, 733 F.3d 1180, 1185 (Fed. Cir. 2013). Since the presumption of competence leaves veterans with no way to effectively challenge the nexus between the VA examiners’ qualifications and their opinions, due process afforded other individuals in other legal disciplines is not extended to veterans. There is no reasoned justification or evidentiary support for treating veterans differently with respect to medical opinions.
A veteran’s claim to disability benefits often will rise or fall based on whether the Board believes an examiner’s testimony. Gambill v. Shinseki, 576 F.3d 1307, 1322-23 (Fed. Cir. 2009) (Bryson, J., concurring); id. at 1324 (Moore, J., concurring). Yet, a veteran’s ability to challenge an examiner’s competency is limited because the VA does not by default disclose any information about the examiner’s qualifications. Mathis II at 975-77 (Reyna, J., concurring).[7] Veterans are unable to confront examiners through voir dire, cross-examination, or interrogatories. See, e.g., VA Manual M21-1MR § III.iv.3.D.2.o (‘VA’s *1357 C&P claim adjudication system does not have a procedure for completion of interrogatories by VA personnel.”); ' No. 1340011, 2013 WL 7220329, at *6 (Bd. Vet. App. Dec. 4, 2013) (“There is no provision for interrogatories to the specialist.”); 38 C.F.R. §§ 20.700(c), 20.706 (no cross-examination is permitted at Board hearings); Gambill, 576 F.3d at 1324 (Moore, J., concurring) (arguing that a veteran ought to be “provided with the opportunity to confront the doctors whose opinions [the VA] relies upon to decide whether veterans are entitled to benefits”).
The presumption allows the VA to rely on examiners’ opinions to deny veterans benefits without disclosing anything about their qualifications t;o the veteran or to the Board. It permits the Board to rely on opinions when it knoiys almost nothing about the person who prepared them. It almost entirely insulates the VA’s choice of medical examiners from review. On the other hand, individuals providing examinations on behalf of veterans have their qualifications and credentials carefully reviewed by the Board before their opinions are given weight.[8] See, e.g., No. 1512074, 2015 WL 2161715, at *16 (Bd. Vet. App. Mar. 20, 2015). The presumption severely limits veterans’ ability to effectively challenge adverse examiner opinions.
Even if a veteran objects to an examiner’s competence before the Board, a veteran must make a “specific” objection to an examiner’s competence — not merely a “general” one — before the Board will review the examiner’s competence. Mathis II at 977-78, n. 8 (Reyna, J., concurring) (citing cases). Presumably, a specific objection entails pointing to a specific aspect of an examiner’s qualifications. But with no information available on the examiner’s qualifications, a veteran is hindered in, if not entirely precluded from, making such a specific objection before the Board.
If a veteran asks for an examiner’s qualifications, the VA will not provide thém unless it is ordered to do so by the Board, the Veterans Court, or this court. See, e.g., Nohr v. McDonald, 27 Vet.App. 124, 128 (2014) (finding that the Board erred in denying a veteran’s request for an examiner’s CV when the veteran had identified an ambiguous statement in the examiner’s report that suggested irregularity in the process of selecting the examiner); see also Mathis II at 975-77, n. 5 (Reyna, J., concurring). The Board may refuse to order the VA to do so when the veteran has not already raised a specific objection to the examiner’s competence. No. 1452787, 2014 WL 7740599 at *8 (Bd. Vet. App. Dec. 1, 2014). This can create a situation in which the veteran must make a specific objection to an examiner’s competence before she can learn the examiner’s qualifications; otherwise, the Veterans Court and this court will deny a veteran’s challenge to the competency of the examiner. The veteran is rendered hapless, caught in a classic Joseph Heller eatch-22-like circumstance.
As it does in cases involving medical opinions provided by professionals hired by the veteran, the Board should be able to examine a VA examiner’s qualifications and weigh them in determining the persuasive value of an examiner’s reports rather than being instructed by this court to presume that the examiner is competent. The VA’s incentive to not provide evidence about the examiner’s qualifications will be strongest when an examiner is not qualified or is barely qualified, the very circumstances where the veteran, the Board, and the Veterans Court ought to know an examiner’s qualifications.
*1358 Ordinarily, before an expert opinion may be relied upon, the expert’s competence must be established. See, e.g., Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592-93, n. 10, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); Fed. R. Evid. 104. This court has explained that “competency requires some nexus between [an examiner’s] qualification[s] and opinion.” Parks v. Shinseki, 716 F.3d 581, 585 (Fed. Cir. 2013). Similarly, the Supreme Court has explained that an expert witness is permitted to testify on matters outside his firsthand knowledge because of “an assumption that the expert’s opinion will have a reliable basis in the knowledge and experience of his discipline.” Daubert, 509 U.S. at 592, 113 S.Ct. 2786. VA medical examiners are “ ‘nothing more or less than expert witnesses’ who provide opinions on medical matters.” Townsend v. Shinseki, No. 12-0507, 2013 WL 2152126, at *5 (Vet. App. May 20, 2013) (quoting Nieves-Rodriguez v. Peake, 22 Vet.App. 295, 302 (2008)).
The regulation applicable here — 38 C.F.R. § 3.159(a)(1) — is analogous to Federal Rule of Evidence 702. Under Rule 702, district courts first determine if an expert witness is competent to testify on a subject before relying on the expert’s testimony. See, e.g., Carlson v. Bioremedi Therapeutic Sys., Inc., 822 F.3d 194, 199 (5th Cir. 2016). In patent cases, “[testimony proffered by a witness lacking the relevant technical expertise fails the standard of admissibility under Fed. R. Evid. 702.” Sundance, Inc. v. DeMonte Fabricating Ltd., 550 F.3d 1356, 1363 (Fed. Cir. 2008). The Veterans Court has explained that the “rules on expert witness testimony” in the Federal Rules of Evidence “provide useful guidance” for the Veterans Court. Nieves-Rodriguez, 22 Vet.App. at 302.
The Supreme Court’s decision in Richardson v. Perales supports a finding that, under the presumption of competence, veterans lack due process. 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). In Pe-rales, the Supreme Court concluded that procedural due process did not preclude five physicians’ written reports from being admitted into a social security disability claim hearing without cross-examination based on several specific factors that would “assure underlying reliability and probative value.” Id. at 402-03, 91 S.Ct. 1420. Several of those factors are not met here. First, the claimant in Perales, unlike the veterans here, had a right to subpoena the reporting physicians. Second, the physicians in Perales were all practicing physicians, unlike some career examiners at the VA. Third, the examinations in Perales were all clearly “in the writer’s field of specialized training.” Id. at 404, 91 S.Ct. 1420. In contrast, the VA “broadly recommends assigning generalists except in unusual, ill-defined cases.” Mathis II at 974.
Several circuit courts have found that social security claimants have an absolute right to cross-examine a reporting physician. This stems from the Supreme Court’s reference in Richardson v. Perales to a claimant’s “right to subpoena the reporting physician and thereby provide himself with the opportunity for cross-examination of the physician.” 402 U.S. at 402, 91 S.Ct. 1420; see, e.g., Lidy v. Sullivan, 911 F.2d 1075, 1077 (5th Cir. 1990).
“In the veterans’ uniquely claimant friendly system of awarding compensation, breaches of the duty to assist are at the heart of due process analysis.” Cook v. Principi, 318 F.3d 1334, 1354 (Fed. Cir. 2002) (Gajarsa, J., dissenting). “If the Constitution provides no protection against the occurrence of such breaches, then the paternalistic interest in protecting the veteran is an illusory and meaningless assurance.” Id. The presumption of competence is inconsistent with the VA’s duty to assist veterans and the non-adversarial nature of the proceedings. See Hayre v. W., 188 F.3d *1359 1327, 1331-32 (Fed. Cir. 1999); 38 U.S.C. § 5103A. “Congressional mandate requires that the VA operate a unique system of processing and adjudicating claims for benefits that is both claimant friendly and non-adversarial."Hayre, 188 F.3d at 1331. “An integral part of this system is embodied in the VA’s duty to assist the veteran in developing facts pertinent to his or her claim.” Id.
The duty to assist has been found to require the VA to provide the veteran with his service medical records, upon request, and to inform the veteran of that right. Watai v. Brown, 9 Vet.App. 441, 444 (1996) (“[T]he Secretary had a duty to inform the [veteran] that the Secretary, upon proper authorization as required by VA regulations, would furnish copies of relevant service medical records to [his private physician] to enable him to render a less speculative opinion.”). Denying veterans information about the qualifications of their examiners denies them both the assistance necessary to make their claims and their due process rights in making those claims.
IV. ADMINISTRATIVE BuRDEN
The VA makes two arguments why the presumption should not be removed. First, the VA argues that “in the absence of the presumption established by Rizzo, ‘a concrete, clear standard for determining the sufficiency of an examiner’s qualifications to conduct a medical examination’ would be needed.” Resp. to Pet. for Reh’g En Banc 12 (quoting Mathis II at 975). As support, the VA states that the ‘VA provides an enormous volume of compensation examinations annually.” Id.
The VA is correct. Overturning Rizzo would require the VA to apply a standard for selecting competent examiners. The VA, however, overlooks that it has already promulgated a clear standard for the VA and the Board to apply when deciding whether a medical examiner is competent:
(1) Competent medical evidence means evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. Competent medical evidence may also mean statements conveying sound medical principles found in medical treatises. It would also include statements contained in authoritative writings such as medical and scientific articles and research reports or analyses.
38 C.F.R. § 3.159(a)(1) (emphasis added).
The Board can assess whether an examiner meets this regulation upon review of her education, training, or experience.[9] Indeed, this is the standard the Board applies when it reviews the credentials of private physicians providing opinions and examinations on behalf of veterans, for whom there is no presumption. See, e.g., No. 1100100, 2011 WL 749935, at *8 (Bd. Vet. App. Jan. 3, 2011) (“The Board finds that the private physician is qualified through education, training, and experience to offer a diagnosis and an opinion in this case.”) (citing 38 C.F.R. § 3.159).
Second, the VA defends the presumption of competence on the basis that removing it “would impair the efficiency of’ the VA’s “provision of medical examinations and opinions.” Resp. to Pet. for Reh’g En Banc *1360 13. It is not clear that the substantive content, the quality of the opinion, would be affected if the presumption of competence were removed. It is clear that removing the presumption would result in an administrative record upon which the Board could properly review an examiner’s qualifications when weighing the persuasiveness of her reports. In addition, having an examiner’s CV would permit a veteran to determine whether or not to challenge the examiner’s competence.
But in the long run, removing the presumption of competence could improve the efficiency of the judicial review process in YA cases. As a veteran’s “first step” in overcoming the presumption of competence is to object at the Board, if the record contains no evidence about an examiner’s competence, the Board will have to remand to the VA for such evidence whenever a veteran sufficiently objects. Cf. Mathis II at 975-77, n. 6 (Reyna, J., concurring) (citing cases where the Board remanded for the VA to provide a curriculum vitae). And the Veterans Court has already repeatedly needed to remand cases to the Board when a veteran had sufficiently challenged an examiner’s qualifications to the Board but the Board failed to analyze the examiner’s competence. See id. at 975-77, n. 9.
For the foregoing reasons, I respectfully dissent.

. When a veteran applies for disability benefits, the VA is at times required to provide a medical examination or opinion. 38 U.S.C. § 5103A(d). The medical professionals providing such examinations and opinions are called examiners or “compensation and pension” examiners. Cf. J.A. 45. Examiners are employed by the VA or are outside contractors.
VA regional offices use the opinions prepared by examiners in determining whether to award a veteran disability benefits. The decision whether to award benefits often turns on whether the disability is shown to be connected to the veteran’s military service. See, e.g., McClain v. Nicholson, 21 Vet.App. 319, 320-21 (2007). In other words, as in this case, the service connection issue is often dispositive. If a VA regional office denies a veteran benefits, the veteran may appeal to the Board of Veterans' Appeals (the "Board”), and then the United States Court of Appeals for Veterans Claims (the "Veterans Court”), this court, and the U.S. Supreme Court.

. The briefing in this case indicates that Mr. Mathis believes that the examiner was a family practice doctor, see, e.g., Appellant’s Br. 30, but support for this is not in the record.

. In Krugman v. Dep’t of Veterans Affairs, 645 Fed.Appx. 1000,-(Fed. Cir.2016), a whis-tleblower case, this court was afforded a rare view of how the VA selects examiners and the grounds it relies on to establish competency. In that case, the VA hired Dr. Krugman, an anesthesiologist, to be an Associate Chief of Staff for Primary Care in September 2010. J.A. 5, 12. He was hired to perform a variety of responsibilities, including having "oversight responsibilities” for several outpatient clinics in the south Texas area and being the examiner for compensation and pension examinations in that area. J.A. 12, 125, 158-59. The record shows that when he was hired by the VA, Dr. Krugman had not treated a patient in almost ten years. J.A. 25-26, 43. The VA wanted him to prepare to conduct examinations by taking an online course and training for a week with an experienced examiner. J.A. 158-60, 303. He look the online course in October 2010 but did not undertake the in-person training. J.A. 160, 303. The VA granted him privileges to perform examinations on September 8, 2010 for one facility and on May 5, 2011 for a different facility. J.A. 134-35; Oral Arg. 15:04-16:38.
When asked to perform compensation and pension examinations, Dr. Krugman refused on grounds that he was not qualified. J.A. 161-62, 210, 303. The refusal formed one of the complaints against him when the VA fired him. J.A. 303; Resp. Br. 4. He argued on appeal that his refusal to perform examinations could not have supported his firing because he did not believe he was qualified to perform them, and that a week of in-person training would not have made him qualified. Pet’r Br. 30-31.

. U.S. Dep’t of Veterans Affairs, Board of Veterans' Appeals Annual Report Fiscal Year 2015 26 (2016), available at http://www.bva.va.gov/ docs/Chairmans_AnnuaLRpts/BVA2015AR. pdf.

. As my concurring opinion noted, the VA had recently admitted that it used unqualified examiners for some traumatic brain injury (TBI) examinations. Mathis II at 984-85 (Reyna, J., concurring). According to VA guidelines, initial examinations for TBI must be performed by only certain types of doctors, unlike most other diseases and conditions, for which there are no such limiting guidelines. Id. at 982-83, 984-85. The VA recently admitted further that more than 24,000 veterans received initial examinations for TBI conducted by unqualified examiners. U.S. Dep’t of Veterans Affairs, VA Secretary Provides Relief for Veterans with Traumatic Brain Injuries (June 1, 2016), http://www.va.gov/opa/ pressrel/pressrelease. cfm?id=2795.

. This court has extended the presumption of competence to apply not only to examiners, but also to their reports. See Mathis II at 976, n. 2 (citing Sickels v. Shinseki, 643 F.3d 1362, 1366 (Fed. Cir. 2011) ("The argument that a VA medical examiner's opinion is inadequate is sufficiently close to the argument raised in Rizzo that it should be treated the same.”)). The Board has indicated that Sickels means that "in the absence of a challenge to a VA medical opinion, it is presumed to be adequate.” No. 1235436, 2012 WL 6556998, at *11 (Bd. Vet. App. Oct. 12, 2012).

. The VA does not even obtain information about an examiner’s qualifications in every case. Appellee Br. 17.

. "Congress expressly permits veterans seeking service-connected disability benefits to submit reports from private physicians." Gardin v. Shinseki, 613 F.3d 1374, 1378 (Fed. Cir. 2010) (citing 38 U.S.C. § 5125).

. To be clear, the Board — not this court— should decide what qualifications are needed to satisfy 38 C.F.R. § 3.159(a)(1) in application. Whether an examiner has the necessary training and experience is a factual determination. See, e.g., Bradshaw v. Richey, 546 U.S. 74. 79, 126 S.Ct. 602. 163 L.Ed.2d 407 (2005); Mass. Mut. Life Ins. Co. v. Brei, 311 F.2d 463, 472 (2d Cir. 1962). Removing the presumption will not mean that the VA always has to have specialists perform examinations. See, e.g., No. 0838133, 2008 WL 5511667 at *7 (Bd. Vet. App. Nov. 5, 2008).