# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 22-3957

BRUCE MOSEBY BRACK, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued November 28, 2023                    Decided April 24, 2024)

*Kenneth H. Dojaquez*, of Topeka, Kansas, for the appellant.

*Emily P. Stanley*, with whom *Richard J. Hipolit*, Deputy General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Mark J. Hamel*, Deputy Chief Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before TOTH, LAURER, and JAQUITH, *Judges*.

TOTH, *Judge*, filed the opinion of the Court. JAQUITH, *Judge*, filed an opinion concurring in the judgment.

TOTH, *Judge*: Although VA claimants have a right to submit argument to the Board in support of their appeals, no regulation or other rule explicitly states the timeframe for doing so. In cases where no Board hearing was requested, VA historically advised claimants that they should submit argument, if any, during the 90-day period for submitting evidence following certification of appeals to the Board. That submission period was codified formerly at 38 C.F.R. § 20.1304(a). Relying on § 20.1304(a), we held in *Bryant v. Wilkie*, 33 Vet.App. 43 (2020), that the fair process doctrine prohibited the Board from issuing a decision before the expiration of that 90-day period when a claimant states an intention to submit argument (unless argument is, in fact, submitted sooner).

But *Bryant* addressed the system—now known as the legacy system—that existed before passage of the Veterans Appeals Improvement and Modernization Act of 2017 (AMA). The AMA replaced the one-size-fits-all period for evidentiary submissions to the Board with three review lanes, each of which operates on a distinct timeframe for submissions. One of those options, the direct review lane, can be chosen when a claimant doesn't wish to submit evidence or receive a

hearing and instead wants the Board to issue a decision as soon as possible. This differentiates the direct review lane from the other two paths, both of which explicitly provide 90-day periods before which the Board will not issue a decision.

In this case governed by the modernized system, Army veteran Bruce Moseby Brack asked the Board to delay issuing a decision until 90 days after his non-attorney representative received a copy of his claims file so that the latter could submit evidence. Thereafter, however, the veteran filed a formal appeal to the Board and chose the direct review lane. The Board didn't wait the 90 days. The question before the Court is whether the Board failed to liberally construe Mr. Brack's delay request as stating an intention to submit argument and, if so, whether *Bryant*'s fair process holding required the Board to honor the request in these circumstances for an exception to the expedited procedures of the direct review lane.

We conclude that, even if the Board did misconstrue the veteran's request, fair process didn't require the Board to delay issuing its decision. The appellate procedures and options provided by the AMA ensure that a claimant in Mr. Brack's circumstances has ample opportunity to present argument to the Board, thereby affording all the procedural rights the fair process doctrine is meant to protect. That Mr. Brack chose the one appellate option ill-suited to his circumstances is not a proper basis for the Court, in the name of fair process, to alter the essential nature of that option.

## I. BACKGROUND

Mr. Brack served in Vietnam for nearly a year beginning in October 1967 and, as a result of that service, is presumed exposed to herbicide agents. In 2021, he sought and was granted compensation for coronary artery disease with atherosclerotic cardiovascular disease with a 10% rating effective from January 5 of that year. He disagreed with the effective date assigned.

The regional office (RO) denied an earlier effective date for cardiovascular disease compensation in July 2021. The following month, on August 25, the veteran's representative filed a VA Form 3288, "Request for and Consent to Release of Information from Individual's Records," seeking a copy of his "entire VA claims file" under the Privacy Act. R. at 104. The form stated: "I am requesting these documents so that I may have the benefit of a complete file review for presentation and prosecution of his current and future requests." *Id.* In a cover letter submitted with the form, the representative wrote:

> Please send me a copy of the entire claims folder on CD. We are working on securing an independent evaluation or opinion to support the claims and or [sic] appeals filed for compensation purposes. Should any issues be pending [Board] review, I am asking for a 90 day extension from the date in which this [Privacy Act] request is completed to submit additional supporting evidence.

R. at 103. At the time of these August 2021 submissions, the veteran had not yet taken any direct action to challenge the RO's effective date decision.

That changed a few months later, in October 2021, when Mr. Brack appealed the issue to the Board via VA Form 10182, a Notice of Disagreement (NOD). He selected "Direct Review" by a Board member; in so doing, he indicated (per the form): "I do not want a Board hearing, and will not submit any additional evidence in support of my appeal." R. at 96. The form also advised: "Choosing this option often results in the Board issuing its decision most quickly." *Id.* (emphasis omitted). VA supplied Mr. Brack's representative a copy of the claims file on January 20, 2022.

The Board issued the present decision 47 days later, on March 8, 2022, denying an earlier effective date. Because Mr. Brack chose the direct review lane, the Board considered only the evidence of record at the time of the July 2021 RO decision. The Board acknowledged that the veteran's representative "requested a 90[-day] extension from the date the Privacy Act Request was fulfilled to *submit additional supporting evidence* should any issues be pending [Board] review." R. at 6. But, the Board observed, based on the direct review option later selected by the veteran in his NOD, no new evidence could be considered by the Board at all. And because the review lane Mr. Brack selected obviated the stated reason for the requested 90-day delay, and because the claims file had been provided, the Board found "no legal basis to delay adjudication of this Veteran's earlier effective date appeal" and proceeded to issue its decision. R. at 7.

## II. ANALYSIS

Mr. Brack does not challenge the merits of the Board's decision on the earlier effective date issue. His argument is procedural. First, he contends that the Board should have construed his August 2021 submissions together and in a liberal manner so as to recognize that his representative was seeking a 90-day period in which to submit *argument* as well as evidence. With that proper understanding of the basis for the requested delay, Mr. Brack argues, the Board's failure to delay its decision until the 90 days expired or he submitted argument violated the fair process doctrine. In so arguing, he relies almost entirely on *Bryant*, which held that, when an appellant notifies VA of an intent "to submit additional argument or evidence to the Board during the period specified in

3

§ 20.1304(a)"—what is now 38 C.F.R. § 20.1305(a)—"principles of fair process prohibit the Board from issuing an adverse decision until it either receives that argument or evidence or until 90 days have elapsed since mailing" the notice of the certification of the appeal to the Board. 33 Vet.App. at 44. Although *Bryant* addressed procedures in the legacy system, Mr. Brack asserts that the decision's fair process holding is equally applicable in the modernized system.

In resolving this argument, we consider the principles of the fair process doctrine, the relevant changes in appellate procedure effected by the AMA, and the circumstances presented in this case. And all considered, we conclude that Mr. Brack was not denied fair process.

A.

This Court "created what became known as the 'fair process' doctrine'" in *Thurber v. Brown*, 5 Vet. App. 119 (1993). *Sprinkle v. Shinseki*, 733 F.3d 1180, 1185 (Fed. Cir. 2013). It is a non-constitutional right fashioned at a time when it was not yet clear whether VA claimants had property rights protected by the Due Process Clause of the Fifth Amendment; such rights have since been recognized. *Id.* The doctrine supplements statutes and regulations "in situations where no particular procedural process is required" but there can be discerned an implicit need for additional process "when viewed against the underlying concepts of procedural regularity and basic fair play of the VA benefits adjudicatory system," a system which "provides for notice and an opportunity to be heard at virtually every step." *Bryant*, 33 Vet.App. at 46 (cleaned up). Put differently, the concept of fair process is derived primarily from "the underlying VA adjudicatory scheme" in which it is invoked. *Sprinkle*, 733 F.3d at 1185. But while fair process supplements the procedural rules of statutes and regulations, it cannot supplant them. *See, e.g.*, *id.* at 1186 (rejecting a veteran's "argument for incorporating a 60-day response period into the fair process doctrine" because the regulation from which the veteran extracted that period was "inapplicable" to the facts of his case).

When VA procedural rules are validly altered or amended, the fair process doctrine must adapt to that new reality. For example, in *Aviles-Rivera v. McDonough*, 35 Vet.App. 268 (2022), we rejected a fair process challenge to the AMA's restriction of the evidentiary record in direct review appeals. The veteran there failed to explain "how the evidentiary record restriction is an unfair flaw in the new review process rather than an intended feature of that process." *Id.* at 279. Although he argued that this restriction "does not reflect a veteran-friendly system," the Court recognized that, in adopting the AMA, "Congress sought to reduce a key inefficiency in the legacy

4

appeals process—the continuous cycle of evidence-gathering and readjudication of the same claim—while still protecting claimants' rights." *Id.* In other words, once the veteran chose the direct review lane option, which by law restricts the universe of evidence that may be considered on appeal, he could not then claim that the fair process doctrine requires an exception to that restricted evidence rule. The requirements of the fair process doctrine must be derived from the procedural context in which the doctrine is invoked. *Sprinkle*, 733 F.3d at 1185.

B.

*Bryant*'s fair process ruling was based on § 20.1304 as it stood before it was amended by the AMA; it therefore concerned the legacy system. *See* 33 Vet.App. at 44 n.2. And there are key differences between the appellate scheme at issue in that case and the adjudicatory scheme at issue in this case.

In the pre-AMA legacy system that *Bryant* addresses, all Board appeals were governed by the same procedures. (These legacy provisions are presently codified in part 19 of VA regulations.) Save for minor variations not relevant here, a claimant dissatisfied with a rating decision filed an NOD with the RO and, if benefits could not be granted in full, received a Statement of the Case. 38 C.F.R. §§ 19.26(d), 19.51 (2023). The claimant could then seek Board review by filing a timely Substantive Appeal—again, usually with the RO—and deciding whether to request or forego a personal hearing before the Board and the manner of that hearing. 38 C.F.R. § 19.30, 19.51 (2023). Once a Substantive Appeal was filed, the RO would certify the case to the Board and notice of such would be sent to the claimant. 38 C.F.R. §§ 19.35, 19.36 (2023). This notice was commonly referred to as the "90-day letter." *E.g.*, *Bryant*, 33 Vet.App. at 45 (brackets omitted).

This "mailing of notice that an appeal had been certified and transferred to the Board" was "the triggering event for application of § 20.1304(a)." *Williams v. Wilkie*, 32 Vet.App. 46, 51 (2019), *aff'd per curiam*, 828 F. App'x 721 (Fed. Cir. 2019) (mem.). This regulation provided:

> An appellant and his or her representative, if any, will be granted a period of 90 days following the mailing of notice to them that an appeal has been certified to the Board for appellate review and that the appellate record has been transferred to the Board, or until the date the appellate decision is promulgated by the Board . . . , whichever comes first, during which they may submit a request for a personal hearing, additional evidence, or a request for a change in representation.

38 C.F.R. § 20.1304(a) (2017). The Board would "not accept a request for a change in representation, a request for a personal hearing, or additional evidence" after the 90 days expired "except when the appellant demonstrates on motion that there was good cause for the delay," such

as "the discovery of evidence that was not available prior to the expiration of the period." 38 C.F.R. § 20.1304(b) (2017).

Noticeably, § 20.1304(a) said nothing about the time period for submitting argument (save tangentially through its reference to a personal hearing). But VA had often treated the regulation's 90-day period for submitting evidence as implicitly covering the timeframe for submitting arguments as well, at least in cases where a claimant had not requested a hearing before the Board. *See, e.g.*, VETERANS BENEFITS MANUAL § 13.3.2 & Appendix 13-A-1 (Barton F. Stichman et al. eds., 2023-2024); *see also Kutscherousky v. West*, 12 Vet.App. 369, 372–73 (1999) (invoking § 20.1304(a) to conclude that claimants have a right to a 90-day period following a remand from this Court to submit "additional evidence and argument" to the Board).

That is clearly what the Agency did in *Bryant* when it sent him a 90-day letter. *See* 33 Vet.App. at 45. And "[o]nce Mr. Bryant affirmatively notified the Board that he intended to submit additional argument during the § 20.1304(a) period," we concluded that he had "implicitly request[ed] that VA withhold a decision until he had done so" and held that "basic principles of fair play, inherent in the VA benefits adjudication system in general and that regulation in particular, required the Board to wait to issue its decision until the veteran either submitted the additional argument or until the maximum 90 days for doing so without needing to show good cause had elapsed." *Id.* at 47. Stated otherwise, the Court determined that § 20.1304(a) and the 90-day letter created "a reasonable expectation that, absent a contrary response from the Board, he or she will have the maximum 90 days to submit that additional argument and evidence without needing to show good cause." *Id.* at 48.

But the Board in *Bryant* did not wait. By issuing a decision after only 70 days, the Board violated that reasonable expectation and failed to provide a meaningful opportunity for the appellant to participate in the appeals process, "ignor[ing] the appellant's request to submit supporting argument during a period when such submissions are generally authorized by regulation." *Id.* at 48–49. Requiring the Board to wait in those circumstances for the full 90 days specified in § 20.1304(a), we reasoned, "furthers, rather than subverts, the orderly processing and resource-saving purposes of that regulation."[1] *Id.* at 49.

---

[1] When a claimant *doesn't* state an intention to submit additional evidence or argument during § 20.1304(a)'s 90-day period, fair process does not oblige the Board to wait 90 days to issue its decision. *See Bryant*, 33 Vet.App. at 47–48.

The AMA fundamentally altered VA's appellate scheme.[2] Claimants in the legacy system "had only one pathway to seek administrative review of an unsatisfactory initial decision on their disability claim from the agency of original jurisdiction (AOJ)." *Military-Veterans Advocacy v. Sec'y of Veterans Affairs (MVA)*, 7 F.4th 1110, 1118 (Fed. Cir. 2021). "This one-size-fits-all-claims pathway was long and complicated," considered by many to be "broken, marked by lengthy delays, and plagued with a formidable backlog of cases." *Id.* (quotation marks omitted). Through the AMA, Congress sought to "streamlin[e] the administrative appeals system while still protecting claimants' due process rights." *Id.* at 1119.

In the modernized system governing Mr. Brack's appeal, certification no longer occurs and an NOD is filed directly with the Board. 38 C.F.R. § 20.203(a) (2023). Most relevant here, there is no longer a general 90-day period for submitting additional evidence provided by § 20.1304. *See* 38 C.F.R. § 20.1304 (2023) (now covering only requests for changes in representation). Instead, the AMA introduced a key reform, allowing claimants to "choose from three procedural lanes to obtain review of their claim within one year of the initial decision." *MVA*, 7 F.4th at 1119. "The AMA's three-lane system was intended to alleviate the legacy system's growing appeals backlog by allowing claimants to choose from new and more efficient administrative review pathways specifically tailored for their needs." *Id.* at 1140.

A claimant must choose a specific review lane when submitting an NOD, 38 C.F.R. § 20.202(b) (2023), and with that choice the claimant also decides the timeframe on which the appeal will operate. The three options are as follows:

> (1) Direct review by the Board of the record before the [AOJ] at the time of its decision, without submission of additional evidence or a Board hearing;
>
> (2) A Board hearing, to include an opportunity to submit additional evidence at the hearing and within 90 days following the hearing; or
>
> (3) An opportunity to submit additional evidence without a Board hearing with the [NOD] and within 90 days following receipt of the [NOD].

*Id.*; *see* 38 U.S.C. §§ 7105(b)(3), 7113. The direct review lane is the only review lane that doesn't permit submission of additional evidence and doesn't defer issuance of a Board decision for a

---

[2] Following passage of the AMA, VA amended § 20.1304(a) and recodified it as § 20.1305(a). *Bryant*, 33 Vet.App. at 44 n.2. That provision continues to govern appeals in the legacy system and contains all the procedural components of pre-amendment § 20.1304(a). *Compare* 38 C.F.R. § 20.1305 (2023), *with* 38 C.F.R. § 20.1304 (2017). In *Costello v. McDonough*, 36 Vet.App. 43, 55 (2023), we held that § 20.1305(a) doesn't facially deprive a legacy claimant of the due process right to notice and the opportunity to respond if the claimant's appeal is decided less than 90 days after notice of certification to the Board.

specified 90-day period. Based on these review lanes, the Board maintains three separate dockets and—barring exceptions—"each appeal will be decided in the order in which it is entered on the docket to which it is assigned." 38 C.F.R. § 20.800(a)(1), (b) (2023).

And a claimant who wishes to switch from one review lane to another may do so by submitting a new NOD within a certain time; an appeal "moved from one docket to another will retain its original docket date." 38 C.F.R. § 20.800(a)(2); *see* 38 C.F.R. § 20.202(c)(2). So, for example, a claimant who initially chose lane (2) or (3) may switch to lane (1) if the claimant decides, within the specified time, not to submit evidence or Board testimony after all. *See* 38 C.F.R. § 20.202(c)(2); *see also Andrews v. McDonough*, 34 Vet.App. 151, 156–57 (2021).

"The direct review lane is the quickest review option available at the Board. The Board's goal for processing appeals in the direct review docket is 365 days from the filing of the NOD." VETERANS BENEFITS MANUAL § 13.2.3.1 (*citing* 84 Fed. Reg. 138, 153 (Jan. 18, 2019)).

With this far-reaching overhaul of VA appellate procedures in mind, we consider whether *Bryant*'s fair process ruling can be transplanted from the legacy system in which it exists to the "whole new world" of the modernized system that governs Mr. Brack's case. *Andrews*, 34 Vet.App. at 156.

## C.

As a preliminary matter, we note the veteran's argument that the August 2021 submission should have been liberally construed by the Board as a request for a 90-day delay "to provide both evidence *and* argument." Appellant's Br. at 5 (emphasis added). Instead, the Board read his request as an intention to submit evidence that was abandoned when the veteran subsequently chose the direct review lane. R. at 6–7. It's true that the Board is obliged to construe all claimants' submissions liberally. *See Scott v. McDonald*, 789 F.3d 1375, 1380 (Fed. Cir. 2015). But in liberally construing submissions, the Board must "consider the full context within which those submissions are made." *Rivera v. Shinseki*, 654 F.3d 1377, 1382 (Fed. Cir. 2011); *see also Rickett v. Shinseki*, 26 Vet.App. 210, 220 (2013) (en banc) (observing that the liberal construction of a submission takes into account not only "the context of its language" but also the "circumstances of filing"), *withdrawn on other grounds*, 27 Vet.App. 240 (2015).

Mr. Brack has limited his liberal construction argument to the four corners of the August 2021 submission without addressing the full context in which the Board was bound to consider it. That full context includes the modernized system, which introduced multiple appeal lanes from

8

which a claimant could choose, each with differing procedures, scopes, and timeframes for Board review. Nevertheless, we assume without deciding in this appeal that the Board should have understood Mr. Brack as having requested a 90-day delay in its issuing a decision in the direct review lane so that he could submit argument.[3] Even with that assumption, however, we are not persuaded that the veteran was denied fair process in this case.

Recall that the fair process doctrine, formulated in the context of a one-size-fits-all VA benefits adjudicatory system, imposes additional process not specified in statutes or regulations when such process is necessary to protect claimants' rights to notice and the meaningful opportunity to be heard—rights that are foundational to that system. *Bryant*, 33 Vet.App. at 46. Mr. Brack asserts that, to ensure that he had a "reasonable amount of time" to submit argument, fair process "demand[ed]" here that the Board delay issuing a decision until 90 days after his representative received a copy of the claims file even after he chose the direct review lane for his appeal. Reply Br. at 6–7.

We disagree. While Mr. Brack clearly had a right to submit argument to the Board, and that right logically encompasses an appropriate amount of time to obtain and review the claims file so as to develop such argument, the 90-day delay he sought is unmoored from any procedural standard applicable to the direct review lane and inconsistent with the expeditious process it was designed to provide. In other words, the procedures of the direct review lane that Mr. Brack chose provided no reasonable expectation that the Board would delay issuing a decision for 90 days. What is more, Mr. Brack could have taken advantage of the appeal deadlines and alternative review lanes provided by the modernized system, which would have afforded him the fair process he contends his circumstances warranted—namely, the reasonable opportunity for his representative to obtain and review the claims file and to submit argument.

It is important to clarify what is at issue in this appeal. Whether in the legacy system or the modernized system, a claimant's right to submit argument to VA generally, and the Board specifically, is recognized by VA regulations and is not in dispute here. *See, e.g.*, 38 C.F.R. §§ 3.103(c)(1), (d)(2), 19.22, 19.29, 20.104(c), 20.202(a), 20.404, 20.700, 20.701 (2023). The crux of this case is the timeframe for exercising this right in a particular procedural context.

---

[3] Neither our caselaw nor the Federal Circuit's clearly identifies the proper standard for reviewing whether the Board properly discharged its liberal construction obligation in particular circumstances. Given our assumption, however, we need not resolve that question here.

And except for a few special circumstances not relevant here, regulations do not address that issue. In the legacy context addressed by *Bryant*, VA had come to treat the 90-day period set forth in the pre-AMA version of § 20.1304(a) as the default period for submitting argument. In formulating rules for the modernized system, VA declined to specify "a reasonable time period for submission of a written statement addressing relevant evidence and argument" to the Board in the direct review lane. 84 Fed. Reg. at 156. The Agency recognized that, although the modernized system "confines evidence submission to certain periods, the statute and proposed regulations do not—apart from creating a faster review process—restrict a representative's ability to submit argument." *Id.* But it thought the "design of the system" sufficed to encourage "advocacy early in the appeals process" because, with respect to the direct review lane, this was "the most efficient way to reach a comprehensive and speedy decision." *Id.* Noting this lack of specified timeframe in the modernized system, the leading practice manual for representatives of VA claimants advises that "[w]ritten argument can be submitted to the Board any time from the filing of the NOD until the issuance of the Board's decision." VETERANS BENEFITS MANUAL § 13.2.3. Thus, when the Board issues a decision is a function of which review lane in the modernized system a claimant chooses.

The fair process doctrine did not require the Board to wait 90 days to issue its decision once Mr. Brack chose the direct review lane. As we've already discussed, *Bryant*'s legacy system holding cannot simply be grafted onto the modernized system. *Cf.* Appellant's Br. at 3. Pre-AMA § 20.1304(a) governed Mr. Bryant's case, and its universally applicable timeframe created "a reasonable expectation" that he could submit argument within the 90-day post-certification period. *Bryant*, 33 Vet.App. at 48. Because argument submission was "generally authorized by regulation" during this period, we reasoned that the concept of fair play inherent in that regulatory framework required the Board to wait when it received affirmative indication that Mr. Bryant intended to submit argument, so that he could participate in that appellate process. *Id.* at 47–49.

The framework of the direct review lane provides no such submission timeframe and gives rise to no such reasonable expectation. Claimants are clearly advised that this review option is meant to result in issuance of a Board decision as soon as possible, and no intervening procedural steps between the filing of the NOD and the issuance of the decision are specified. This speed is not an "an unfair flaw" in the direct review lane process but rather "an intended feature of that process." *Aviles-Rivera*, 35 Vet.App. at 279. If Mr. Brack did not think the direct review lane was

10

the best appellate route in his circumstances, he was free not to choose it. Having chosen the direct review lane, however, he cannot use the fair process doctrine to incorporate a 90-day argument submission period from an inapplicable regulation into it. *See Sprinkle*, 733 F.3d at 1186.

Permitting claimants to choose the direct review lane and then demand individualized adjudication timelines would introduce procedural complexity and alter the fundamentally expeditious nature of the direct review lane, potentially causing delays for other claimants who chose the direct review lane precisely for its quickness. *See* 38 C.F.R. § 20.800(b) (noting that "each appeal will be decided in the order in which it is entered on the docket to which it is assigned," as required by 38 U.S.C. § 7107(a)(4)). In passing the AMA, Congress sought to streamline the VA appeals process and, as part of that overhaul, to give claimants choices about how their claims should proceed. *Aviles-Rivera*, 35 Vet.App. at 279. And in implementing the AMA, "VA possesses a duty not only to individual claimants, but to the effective functioning of the veterans compensation system as a whole." *Veterans Justice Grp, LLC v. Sec'y of Veterans Affairs*, 818 F.3d 1336, 1354 (Fed. Cir. 2016). The statutory and regulatory scheme surrounding the direct review lane make clear that it is the option for claimants who want the Board to issue a decision as quickly as possible. The fair process doctrine does not permit, much less require, procedures that would disrupt that scheme.

Moreover, the modernized system's broader procedural choices provided Mr. Brack's representative ample opportunity to obtain and review the veteran's claims file and to submit argument for Board consideration—the right that the veteran invokes the fair process doctrine to protect in this case. There is no fair process violation when a claimant "had opportunities to raise arguments to the Board but declined to do so." *Williams*, 32 Vet.App. at 59.

Consider the filing of the NOD. Mr. Brack received a dissatisfactory RO decision in July 2021, and his representative requested a copy of the claims file the following month. He had until July 2022 to file an NOD and could have sought an extension on that period for good cause. *See* 38 C.F.R. § 20.203(b)–(c). This one-year deadline afforded an adequate timeframe for the veteran's representative to request, receive, and review his claims file before filing an NOD and choosing an appropriate review lane. (And, in fact, his representative received the claims file in January 2022, leaving approximately six months until the NOD deadline.) Mr. Brack did not avail himself of the full period for submitting an NOD, which could have accommodated his circumstances.

And in addition to the generous period provided for filing an NOD, the modernized system offered review lanes that may have been better suited to the veteran's predicament. Of the three available review lanes, he chose the one that provides the speediest Board decision but, as a consequence, also the briefest period for submitting argument. This is a feature, not a bug, of the direct review lane. The Board hearing and evidence submission review lanes each designate 90-day submission periods during which a Board decision will not issue. 38 C.F.R. § 20.202(b)(2)–(3). True, these periods pertain specifically to submitting evidence rather than argument, and neither review lane option is linked to fulfillment of a claims file request. But these lanes do specify procedures that give claimants a reasonable expectation that Board decisions will not issue before certain dates. Combined with a one-year NOD deadline, therefore, these alternative review lanes offered choices for Mr. Brack, ones that would have delayed issuance of a Board decision in keeping with the veteran's preferred timeline and provided him a reasonable opportunity to submit argument to the Board after his representative received a copy of his claims file.[4] Yet he did not choose them.

Thus, because there were procedural options open to Mr. Brack that would have provided him a reasonable opportunity to submit argument to the Board before it issued a decision, the Court is not persuaded that the fair process doctrine entitled him to a 90-day delay in the context of the direct review lane, which was designed to produce a Board decision as quickly as possible.

### III. CONCLUSION

Accordingly, the Court AFFIRMS the March 8, 2022, Board decision.

JAQUITH, *Judge*, concurring in the judgment: In my view, the veteran has failed to demonstrate prejudicial error, so I concur in the Court's judgment. I cannot concur further because the majority opinion's tepid take on fair process under the AMA may be read to weaken the commitment to fairness at the heart of the system for adjudicating veterans benefits, which would needlessly exemplify "the adage that 'bad facts make bad law.'" *Haig v. Agee*, 453 U.S. 280, 319 (1981) (Brennan, J., dissenting).

---

[4] Even if Mr. Brack's representative wasn't able to present argument to the Board before it issued its decision, he could still advance it in this Court. We routinely apply a "less strict" requirement for issue exhaustion and consider new arguments on appeal when a claimant was not represented by an attorney before VA. *Scott*, 789 F.3d at 1380; *see Massie v. Shinseki*, 25 Vet.App. 123, 127 (2011).

To start, it is undisputed that fair process is required in both legacy and AMA cases. The Secretary specifically said that he "acknowledges that claimants have a general right to fair process in the development and adjudication of their claims and appeals before VA, including under the modernized system." Secretary's Supplemental (Supp.) Br. at 4. The Secretary agreed with the veteran that "even in situations where no particular procedural process is required by statute or regulation, the principle of fair process may nonetheless require additional process if it is implicitly required when 'viewed against [the] underlying concepts of procedural regularity and basic fair play' of the VA benefits adjudicatory system." *Id.* (quoting *Smith v. Wilkie*, 32 Vet.App. 332, 337 (2020) and citing Appellant's Br. at 4); *see also* Secretary's Br. at 7 ("Appellant is correct that principles of fair play may require additional process even where not explicated by statute or regulation."); Appellant's Supp. Br. at 2 ("A claimant has the right to fair process no matter whether his appeal proceeds through the 'legacy' appellate system or pursuant to the procedures of the [AMA]."). The parties' agreement comports with the vision of Congress for the AMA, the Court's caselaw, and VA's assurances.

In enacting the AMA, Congress embraced fair process as a pillar of appeals modernization, saying that the AMA "was designed, in part, to 'streamline VA's appeal process' and 'help ensure that the process is both timely and fair.'" H. Rep. No. 115-135 at 5 (2017). In implementing the AMA and responding to comments recommending goals related to timeliness, VA offered this assurance: "VA is committed to the purpose of appeals modernization, which is to provide fair, efficient, and more timely resolution of cases in which a claimant disagrees with a VA decision." VA Claims and Appeals Modernization, 84 Fed. Reg. 138-01, 147, 2019 WL 247518 (Jan. 18, 2019). And this Court held, in an AMA case last year, that "[t]he Board is obligated to provide fair process to appellants in the adjudication of their claims." *Davis v. McDonough*, 36 Vet.App. 142, 155 (2023).

In this case, the majority opinion is not sufficiently clear on that essential point. For example, the majority relies on the *Sprinkle* decision by the Court of Appeals for the Federal Circuit to state that the Court "'created what became known as the fair process doctrine' in *Thurber v. Brown*, 5 Vet.App. 119 (1993), . . . at a time when it was not yet clear whether VA claimants had property rights protected by the Due Process Clause of the Fifth Amendment," and noted that "such rights have since been recognized." *Ante* at 4 (quoting *Sprinkle v. Shinseki*, 733 F.3d 1180, 1185 (Fed. Cir. 2013)). I fear that statement may be read as implying that fair process is no longer

viable—perhaps even that it has not been viable since the Federal Circuit held, in *Cushman v. Shinseki*, 576 F.3d 1290, 1299-1300 (Fed. Cir. 2009), that "the Due Process Clause of the Constitution applies to proceedings in which the VA decides whether claimants are eligible for veterans' benefits." *Sprinkle*, 733 F.3d at 1185. Any such implication would be wrong.

First, the characterization (by the majority and *Sprinkle*) of the origins of fair process is a mite miserly. Even before *Thurber*, this Court observed that veterans benefits were not mere privileges; their continued receipt was a statutorily created property interest protected by the Fifth Amendment. *Fugere v. Derwinski*, 1 Vet.App. 103, 108 (1990) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976), and *Walters v. Nat'l Assoc. of Radiation Survivors*, 473 U.S. 305, 333 (1985), *aff'd*, 972 F.2d 331 (Fed. Cir. 1992). *Thurber* echoed *Fugere*, added that "some lower federal courts [had] accorded due process rights to applicants," surveyed VA's nonadversarial claims system, and observed that the system "is predicated upon a structure which provides for notice and an opportunity to be heard at virtually every step in the process." *Thurber*, 5 Vet.App. at 123. *Thurber* considered that structure in light of the Supreme Court's holding in *Gonzales v. United States*, a case about denying conscientious objector classification, that notice and an opportunity to reply were implicit in statutes and regulations that were silent on process requirements "'when viewed against our underlying concepts of procedural regularity and basic fair play.'" *Thurber*, 5 Vet.App. at 123 (quoting *Gonzales v. United States*, 348 U.S. 407, 411-12 (1955)). Based on *Gonzales* and VA's nonadversarial claims system, *Thurber* held that before the Board relies on evidence to decide a claim it "must provide a claimant with reasonable notice of such evidence and of the reliance proposed to be placed on it, and a reasonable opportunity for the claimant to respond to it." *Thurber*, 5 Vet.App. at 126.

Our Court first explicitly recognized veterans' right to fair process in *Austin v. Brown,* 6 Vet.App. 547, 551 (1994). Holding "that basic fair play requires that evidence be procured by the agency in an impartial, unbiased, and neutral manner," the Court in *Austin* embraced the fair process principle it implicitly relied on in *Thurber* and seconded *Thurber*'s citation of the Supreme Court's invocation, in *Gonzales*, of a fair process requirement "implicit in the statute and regulations when "'viewed against our underlying concepts of procedural regularity and basic fair play."'" *Austin,* 6 Vet.App. at 551-52 (quoting *Thurber*, 5 Vet.App. at 123, in turn quoting *Gonzales*, 348 U.S. at 412). As *Austin*, *Thurber*, and cases after *Cushman* such as *Smith* and *Bryant v. Wilkie*, 33 Vet.App. 43 (2020), have recognized, fair process was woven into the nonadversarial

14

system that Congress created for the adjudication of veterans claims, which is dramatically more protective of veterans' rights than the construct for ordinary civil litigation. *See Henderson v. Shinseki*, 562 U.S. 428, 440 (2011). The longstanding solicitude of Congress for veterans is reflected in laws "that 'place a thumb on the scale in the veteran's favor in the course of administrative and judicial review of VA decisions.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 416 (2009) (Souter, J., dissenting)). For example, "VA is charged with the responsibility of assisting veterans in developing evidence that supports their claims, and in evaluating that evidence, the VA must give the veteran the benefit of any doubt." *Henderson*, 562 U.S. at 440.

Far from expiring or being subsumed by *Cushman's* recognition that a veteran's "entitlement to benefits is a property interest protected by the Due Process Clause of the Fifth Amendment to the United States Constitution," *Cushman*, 576 F.3d at 1298, ensuring a veteran's right to fair process in the adjudication of his or her claim has been held to be a "well-established" obligation of the Board, existing "[a]side from any constitutional due process requirements that may apply to administrative adjudications." *Nohr v. McDonald*, 27 Vet.App. 124, 134 n.5 (2014). And the Court has made clear "that the principle of fair process applies throughout the process of evidentiary development." *Smith*, 32 Vet.App. at 337. "In the claimant-friendly world of veterans benefits, 'the importance of systemic fairness and the appearance of fairness carries great weight.'" *Arneson v. Shinseki*, 24 Vet.App. 379, 387 (2011) (quoting *Hodge v. West*, 155 F.3d 1356, 1363 (Fed. Cir. 1998)).

Against this backdrop, the majority's observation that *Bryant* cannot be "transplanted" or "grafted" onto the AMA system, *ante* at 8-10, is both unnecessary and misplaced. Fair process is part of the soil in which the AMA system was planted. In the brave new AMA world, as in legacy days of yore, we consider what the fair process principle requires when no particular procedural process is prescribed by statute or regulation. *Bryant*, 33 Vet.App. at 46-47. I read the majority opinion as a commendable effort to do just that—to determine what the fair process principle requires in the sloppy circumstances of this case—and the Court's decision should not be read or used to subvert the fair process principles on which the system for adjudicating veterans claims rests. To that end, I cannot endorse statements that can be read to suggest that fair process principles are foreclosed by the direct review lane's fast pace. *See ante* at 11 ("The fair process doctrine does not permit, much less require, procedures that would disrupt th[e] scheme [to issue a decision as quickly as possible].").

We should simply apply *Bryant* in the setting of this case, which should not diminish *Bryant* or the fair process for which it stands. To be sure, the setting here is different, but a meaningful similarity remains. In *Bryant*, the legacy § 20.1304 (now § 20.1305) gave veterans 90 days to request a hearing, submit evidence, or request a change in representation. *Bryant*, 33 Vet.App. at 45; 38 C.F.R § 20.1304(a) (2017). The current version of § 20.1304 covers only requests for a change in representation, providing—as it did before the AMA—that an appellant may request a change in representation within 90 days or until the Board promulgates its decision, and may do so after 90 days upon demonstrating good cause for the delay.[5] 38 C.F.R § 20.1304 (2023). However, now the time for requesting a hearing is when filing an NOD and the time for submitting evidence is at the hearing and within 90 days afterward (if a hearing is requested) or with the NOD and within 90 days following its receipt (if no hearing is requested). 38 C.F.R § 20.202(b)(2) & (3) (2023). Mr. Brack chose direct review, without submission of additional evidence or a Board hearing. 38 C.F.R § 20.202(b)(1). Notably, both before the AMA and under it, the time for submitting argument is unrestricted but not expressed. *See* VA Claims and Appeals Modernization, 84 Fed. Reg. 138-01, 156, 2019 WL 247518 (Jan. 18, 2019) ("Although the modernized review system confines evidence submission to certain periods, the statute and proposed regulations do not—apart from creating a faster review process—restrict a representative's ability to submit argument."). The AMA did not alter the ability to submit arguments, or the time frame for doing so. And 90 days remains the only benchmark in §§ 20.1304 and 20.1305 (at least for claims that are not simultaneously contested, where claimants have 60 days to comment on evidence, *see* § 20.1305(d)).

In addition, on October 22, 2021—the day after the Board received the veteran's NOD appealing the Board's July 29, 2021, decision—the Board advised the veteran that his appeal had been "placed on the Direct Review docket" and, "[o]n average, appeals on the Direct Review docket are decided within 365 days of being docketed." R. at 56. The Board also advised the veteran that he could request to switch to another AMA docket within 60 days of the date the Board had received his NOD or within one year of the VA decision being appealed, whichever was later. *Id.* But the Board said nothing about the veteran's August 25, 2021, request for his claims

---

[5] The new version of § 20.1304 changes the starting point for the 90 days from the date of mailing to appellants notice that an appeal was certified to the Board and the appellate record transferred there to the date of receipt of the NOD. *Cf.* 38 C.F.R § 20.1304 (2017) and 38 C.F.R § 20.1304 (2023).

file and a 90-day extension from the date he received it. Based upon the Board's response, the veteran had more than 10 months to change dockets and no reason to expect a decision within that time, much less the haste the majority emphasizes or the Board's unusually speedy judgment 47 days after the claims file was provided to the veteran (228 days faster than the Board's average and with 143 days left to elect a different docket). The evidence of how and why that happened is mixed.

First, my view is that the Board was obliged to read the veteran's August 2021 submission sympathetically. "The Government's interest in veterans cases is that justice be done, and the systemic fairness essential for securing justice includes a duty to construe veterans' submissions sympathetically, especially when the veteran is self-represented or represented by someone who is not a licensed attorney." *Perciavalle v. McDonough*, 35 Vet.App. 11, 30 (2021) (en banc), *aff'd in part, vacated in part on other grounds*, 74 F.4th 1374 (Fed. Cir. 2023); *see Comer v. Peake*, 552 F.3d 1362, 1368-70 (Fed. Cir. 2009). So when the Board received the veteran's August 2021 "Privacy Act request" seeking his complete claims file "for presentation and prosecution of his current and future requests" and "asking for a 90 day extension from the date in which this [Privacy Act] request is completed to submit additional supporting evidence," R. at 130-04, the Board should have treated the extension request as encompassing both evidence and argument, the latter of which was unaffected by the veteran's October 2021 choice of direct review. But the fair process violation *Bryant* found intolerable was more than a fumble of a sympathetically construed request for extra time within which evidence or argument might be submitted. The Court noted that Mr. Bryant's appeal stated that "'[f]urther argument will be advanced in [a] memorandum in lieu of [a] form]'" once the Board sent a 90-day letter and found that it was the Board ignoring "Mr. Bryant's express statement that he would submit additional argument" during the 90-day period that "offend[ed] the basic tenets of fair play that underlie the nonadversarial VA appeals process." *Bryant*, 33 Vet.App. at 45, 48-49. Mr. Brack made no such express statement or clear communication that he would submit argument to give rise to a reasonable expectation that, absent a negative response from the Board, he would have 90 days to do so.

However, the Board decision has a different (but related) problem. The Board construed the veteran's August 2021 submission narrowly, as focused on submitting additional evidence, and decided that his October 2021 selection of direct review foreclosed evidentiary submissions. R. at 6-7. But it did not address whether the conflict between the claimant seeking an extension of time

to submit evidence and choosing the review that foreclosed such submissions obliged the Board to "contact the claimant to request clarification of the claimant's intent." 38 C.F.R § 20.202(f) (2023). *See Edwards v. McDonough*, 36 Vet.App. 56, 63 (2023) (holding that VA is required to contact the claimant for clarification "in the face of confusion or uncertainty regarding the claimant's NOD docket election," but not addressing "the situation where the veteran submits additional statements or evidence after submitting the VA Form 10182").

Even more problematic, by ignoring Mr. Brack's request entirely until it denied his appeal, the Board chose the path least consonant with its obligation to provide fair process. As this Court has recognized,

> "[t]he entire veterans claims adjudication process reflects the clear congressional intent to create an Agency environment in which VA is actually engaged in a continuing dialog with claimants in a paternalistic, collaborative effort to provide every benefit to which the claimant is entitled."[] That partnership only works if the Board allows an appellant to contribute to and meaningfully participate in the appellate process . . . .

*Bryant*, 33 Vet.App. at 48 (quoting *Evans v. Shinseki*, 25 Vet.App. 7, 16 (2011)). The Board could have reminded Mr. Brack that he could not submit evidence but advised that he could submit argument, perhaps with a reasonable deadline. The Board could have responded that if Mr. Brack wanted to submit evidence he could ask for a different review docket. The Board could have denied Mr. Brack's request for an extension and indicated that a decision on his appeal was forthcoming. But the Board chose to ignore the veteran—the one course inconsistent with fair process built on engaging in a "continuing dialog with claimants in a paternalistic, collaborative effort," *Evans*, 25 Vet.App. at 16, and allowing a veteran "to contribute to and meaningfully participate in" that process. *Bryant*, 33 Vet.App. at 48; *see Rogers v. Wilkie*, No. 17-4958, 2020 WL 7017608, at *4 (Vet. App. Nov. 30, 2020) (mem. dec.) (persuasively holding that by neither affording the veteran the time he requested to review his claims file nor informing him that his request for additional time was denied, the Board denied him fair process).

As the majority notes, *ante* at 10, VA purposely left the time for submitting argument undefined:

> [A] commenter suggested that representatives do not have an opportunity to review the claims file, compile relevant evidence, and submit argument in support of the veteran's appeal prior to issuance of a Board direct review decision, and that a reasonable time period for submission of a written statement addressing relevant evidence and argument must be written into the regulations. Although the

18

modernized review system confines evidence submission to certain periods, the statute and proposed regulations do not—apart from creating a faster review process—restrict a representative's ability to submit argument. The design of the system favors advocacy early in the appeals process because this is the most efficient way to reach a comprehensive and speedy decision. VA is confident that veterans' advocates will be able to meet this expectation. VA made no changes based on these comments.

VA Claims and Appeals Modernization, 84 Fed. Reg. at 156. VA did not address—in the Federal Register or in this case—how representatives can advocate early in the process when they don't have the file, don't know how much time they have when they get the file, and don't receive any response to their request for time until they read a Board decision denying the veteran's appeal. The fair process foundation of our system for adjudicating veterans benefits requires a VA response, at least to the veteran here. *See Smith*, 32 Vet.App. at 337 ("[E]ven in situations where no particular procedural process is required by statute or regulation, the principle of fair process may nonetheless require additional process if it is implicitly required 'when viewed against the underlying concepts of procedural regularity and basic fair play of the VA benefits adjudicatory system.'") (quoting *Thurber*, 5 Vet.App. at 123).

However, finding error does not end our review, which must "take due account of the rule of prejudicial error." 38 U.S.C. § 7261(b)(2). The veteran generally bears the burden of demonstrating prejudice. *Cook v. McDonough*, 36 Vet.App. 175, 190 (2023); *see Sanders*, 556 U.S. at 409 ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). Underdeveloped arguments do not satisfy that burden. *Sheppard v. McDonough*, 33 Vet.App. 353, 364 (2021). Here, the shortcomings start with the veteran's garbled request for his complete claims file, which aimed at both "presentation and prosecution" of his claim—sympathetically read to include argument—and submitting additional evidence, which was foreclosed by his selection of the direct review docket 2 months later. The Board decision reflects that it denied the veteran's claim of an effective date for his coronary artery disease based on the onset of his disability, rather than the date of his claim. R. at 9-10. Most importantly, the veteran has not identified or developed any argument relating to that decision that the Board's unresponsiveness to his August 2021 request stymied. *See Sanders*, 556 U.S. at 413 (2009) (finding error harmless when the veteran did not tell the Court "what specific additional evidence proper notice would have led him to obtain or seek"); *Costello v. McDonough*, 36 Vet.App. 43, 54 (2023) ("The *Bryant* Court found that the veteran having identified argument and

evidence that he would have submitted during the 90-day period was essential in determining that the veteran 'carried his burden of demonstrating that he was prejudiced by the Board issuing its decision fewer than 90 days after mailing the § 20.1304(a) notice letter.'") (quoting *Bryant*, 33 Vet.App. at 50). At oral argument, the veteran's counsel said:

> I don't know what he intended to argue your honor. All I know is, as we pointed out in our opening brief, that because this was a *Nehmer*[6]claim and because there was an earlier claim for a *Nehmer* covered disease that that's at least one argument that could have been presented that the Board would have been required to address and could have led to additional benefits.

Oral Argument at 37:45 – 38:10, https://www.youtube.com/watch?v=daysXzzAydo. Under the circumstances here, such speculation regarding a general argument that might have been made is insufficient to demonstrate prejudice. Based only on my view that the veteran has not demonstrated prejudice from the Board's error, I concur in the judgment of the Court.

---

[6] *See Nehmer v. U.S. Veterans' Admin.*, 712 F. Supp. 1404 (N.D. Cal. 1989).